Michael BERMAN, as Trustee in
Bankruptcy of Le Beau Tours,
Inc., Plaintiff,

v.

LE BEAU INTER–AMERICA, INC., Rob-
ert S. Le Beau, Harry Le Beau, Winifred
Le Beau, Doris A. Le Beau, S. T. Hui,
Frank H. Seyer, H S Universal Tours,
Inc. and Chemical Bank, Defendants.

No. 79 Civ. 5886 (MEL).

United States District Court,
S. D. New York.

Feb. 27, 1981.

Michael Berman, New York City, for plaintiff.

Marshall, Bratter, Greene, Allison & Tucker, New York City, for defendants Robert S. Le Beau, Harry Le Beau, Winifred Le Beau and Doris A. Le Beau; Paul A. Feigenbaum, New York City, of counsel.

Zalkin, Rodin & Goodman, New York City, for Chemical Bank.

LASKER, District Judge.

Robert S. Le Beau, Harry Le Beau, Winifred Le Beau and Doris A. Le Beau (the "Le Beaus") move pursuant to Fed.R. Civ.Pr. 12(b)(6) and 9(b) to dismiss the complaint against them on the ground that it fails to state a claim upon which relief can be granted and fails to plead the purported fraud with requisite particularity. The Le Beaus oppose Michael Berman's cross-motion to amend his complaint on the ground that the proposed amended complaint fails to cure the defects in the original complaint. Since matters outside the pleadings

have been presented by both Berman and the Le Beaus, the Le Beau motion is treated as one for summary judgment. Fed.R. Civ.Pr. 12(b).

I. *The Complaint*

On March 11, 1977, the Le Beaus sold the entire capital stock in their two companies, Le Beau Tours, Inc. and Le Beau Inter-America, Inc., to Universal Tours, Inc. ("Universal"). Pursuant to the written agreement between Universal and the Le Beaus, the total purchase price was $1,226,-432. (Proposed Amended Complaint, ¶ 19). At the March 11, 1977 closing, Universal paid the Le Beaus $355,665.28, and delivered promissory notes and irrevocable letters of credit issued by Chemical Bank ("Chemical") in favor of the Le Beaus for the balance of $870,762.72. (Proposed Amended Complaint, ¶¶ 25, 26). In the stock purchase agreement the Le Beaus represented and warranted that as of December 31, 1976 the total stockholders' equity of both corporations was not less than $876,432, and that no material changes had occurred between December 31, 1976 and the closing date. (Proposed Amended Complaint, ¶ 16). After closing, Robert S. Le Beau was employed by Le Beau Tours, Inc. as president and a director, and Harry and Winifred were employed as regional sales managers. (Proposed Amended Complaint, ¶¶ 28–34).

Before the closing date, on March 7, 1977, Chemical and Universal entered into a written agreement by which Chemical agreed to furnish letters of credit in favor of the Le Beaus on condition that Universal provide security at least equal to the value of the letters of credit. (Proposed Amended Complaint, ¶¶ 22, 23). At the time the letters of credit were issued, no security had been provided. (Proposed Amended Complaint, ¶ 27).

Berman alleges that also prior to the closing date, the Le Beaus entered into an oral agreement with Universal and S.T. Hui and Frank H. Seyer (officers and directors of Universal) that the retained earnings of $876,432 of Le Beau Tours and Le Beau Inter-America would be used to pay the balance Universal owed the Le Beaus after closing, and would be used as collateral

security and payment for the issuance of the letters of credit by Chemical.[1] (Proposed Amended Complaint, ¶ 13). The purpose of this oral agreement, Berman claims, was to permit the Le Beaus to receive payment of the retained earnings of their two companies "by the subterfuge of a sale of capital stock." (Proposed Amended Complaint, ¶ 14).

The proposed amended complaint recites a series of transactions between Le Beau Tours and Chemical resulting in allegedly fraudulent conveyances from the assets of Le Beau Tours. Le Beau Tours is alleged to have withdrawn funds from its accounts at Chemical and invested them in certificates of deposit, which were then assigned to Chemical to back the letters of credit.[2] The proceeds of the certificates were paid by Chemical to the Le Beaus on their letters of credit. In addition, Le Beau Tours gave Chemical a security interest in substantial portions of its property.

Berman alleges that these conveyances by Le Beau Tours were made without consideration and that each conveyance was made with the active participation, knowledge and consent of the Le Beaus in accordance with their pre-existing oral agreement with Universal, Hui and Seyer. (Proposed Amended Complaint, ¶¶ 29, 41, 44, 48, 49).

On April 5, 1978, an involuntary petition in bankruptcy was filed against Le Beau Tours. Berman, the trustee in bankruptcy, seeks in this action to recover $870,766.72 paid to the Le Beaus under the letters of credit on the grounds that (1) the payments made from the funds of Le Beau Tours to collateralize the letters of credit constituted fraudulent conveyances under § 67(d)(2) of the Bankruptcy Act[3] and §§ 273–76 of the

---

1. Specifically it is alleged:
   "That the defendants Robert S. Le Beau, Harry Le Beau, Winifred Le Beau and Doris A. Le Beau, as officers and directors and as sole owners of the capital stock of the bankrupt corporation Le Beau Tours, Inc., entered into an oral agreement with the defendant H S Universal Tours, Inc. and its officers and directors S.T. Hui and Frank H. Seyer under the terms of which it was agreed that the sum of $876,432.00, the retained earnings of the bankrupt and Le Beau Inter-America, Inc., was to be used to pay the obligation of H S Universal Tours, Inc., evidence by promissory notes for the stock which it had agreed to purchase from Robert S. Le Beau, Harry Le Beau and Winifred Le Beau and that the said moneys were to be used as collateral security for the issuance of the letters of credit by Chemical Bank and for payment of the said letters of credit." (Proposed Amended Complaint, ¶ 13).

2. Specifically, on April 12, 1977, Le Beau Tours withdrew $870,000 from its account at Chemical and deposited it with Chemical New York Corp. at an interest rate of 4.78%, due June 10, 1977. On June 10, 1977, Chemical New York paid $877,833.69 to the Chemical account of Le Beau Tours. On June 14, 1977, officers and directors of Le Beau Tours deposited this money in a certificate of deposit issued by Chemical, at an interest rate of 5.4% maturing September 12, 1977. On July 7, 1977, Le Beau Tours assigned the certificate of deposit to Chemical to back the letters of credit and granted Chemical a security interest in substantial portions of its property. Upon maturation, the proceeds of the certificate were deposited in the account of Le Beau Tours. On September 27, 1977, this money was placed in a new certificate of deposit which was similarly assigned to Chemical. Upon maturation of this second certificate of deposit on March 10, 1978, Chemical used $307,670.93 to pay the first letter of credit due the Le Beaus and placed the balance of $607,933.27 in two new certificates of deposit for payment of the two outstanding letters of credit held by the Le Beaus. On March 10, 1979, when the first of these new certificates of deposit matured, Chemical paid the Le Beaus $326,131.16 on their second letter of credit. (Proposed Amended Complaint, ¶¶ 35–38, 40, 42, 43, 45–47).

3. The Bankruptcy Act, § 67(d)(2), provides:
   "(2) Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this Act by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent; or (b) as to then existing creditors during the continuance of a business or transaction, if made or incurred without fair consideration by a debtor who is engaged or is about to engage in such business or transaction, for which the property remaining in his hands is in unreasonably small capital, without regard to his actual intent, or (c) as to then existing and future creditors, if made or incurred without fair consideration by a debtor who intends to incur or believes that he will incur debts beyond his ability to pay as they mature; or (d) as to then existing and

New York Debtor and Creditor Law,[4] (2) the payments constituted payment of a dividend to the Le Beaus in violation of §§ 510(a)[5] and 719[6] of the New York Business Corporation Law, and (3) the payments resulted in a waste of corporate assets in violation of defendants' duties as officers and directors of Le Beau Tours under § 720 of the New York Business Corporation Law.[7] In addition, Berman seeks to recover a series of payments made by the defendants as officers and directors of Le Beau Tours between March 11, 1977 and June 5, 1978, on the ground that the payments were

made in gross disregard of their duties to the corporation.

## II. Fraudulent Conveyances

The Le Beaus argue that the complaint fails to state a claim against them under either the Bankruptcy Act or the New York Debtor and Creditor Law for the recovery of the allegedly fraudulent conveyances made to collateralize the letters of credit because the complaint does not allege that the Le Beaus did anything improper in connection with the letters of credit transaction.[8]

future creditors, if made or incurred with actual intent as distinguished from intent presumed in law, to hinder, delay, or defraud either existing or future creditors."

4. The relevant sections of the New York Debtor and Creditor Law provide:

"§ 273.

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

"§ 274.

Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.

"§ 275.

Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.

"§ 276.

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

5. Section 510(a) of the New York Business Corporation Law provides:

"A corporation may declare and pay dividends or make other distributions in cash or its bonds or its property, including the shares or bonds of other corporation, on its outstanding shares, except when currently the corporation is insolvent or would thereby be

made insolvent, or when the declaration, payment or distribution would be contrary to any restrictions contained in the certificate of incorporation."

6. Section 719 of the New York Business Corporation Law provides in relevant part:

"(a) Directors of a corporation who vote for or incur in any of the following corporate actions shall be jointly and severally liable to the corporation for the benefit of its creditors or shareholders, to the extent of any injury suffered by such persons, respectively, as a result of such action:

(1) The declaration of any dividend or other distribution to the extent that it is contrary to the provisions of paragraphs (a) and (b) of section 510 (dividends or other distributions in cash or property)."

7. Section 720 of the New York Business Corporation Law provides in relevant part:

"(a) An action may be brought against one or more directors or officers of a corporation to procure a judgment for the following relief:

(1) To compel the defendant to account for his official conduct in the following cases:

(A) The neglect of, or failure to perform, or other violation of his duties in the management and disposition of corporate assets committed to his charge.

(B) The acquisition by himself, transfer to others, loss or waste of corporate assets due to any neglect of, or failure to perform, or other violation of his duties.

(2) To set aside an unlawful conveyance, assignment or transfer of corporate assets, where the transferee knew of its unlawfulness.

(3) To enjoin a proposed unlawful conveyance, assignment or transfer of corporate assets, where there is sufficient evidence that it will be made."

8. The Le Beaus argue that a subsidiary (Le Beau Tours) is permitted under New York law to provide security for the debts of its parent and therefore proper consideration was given

The Le Beaus deny the existence of the oral agreement upon which Berman relies to implicate them in the allegedly fraudulent conveyances and, in any event, maintain that even if they had agreed with Universal, as Berman alleges, that the retained earnings of Le Beau Tours and Le Beau Inter-America would be used to collateralize the letters of credit, such an agreement would not render them liable for the later conveyances. The Le Beaus emphasize that Berman has alleged that the oral agreement referred to the retained earnings of *both* Le Beau Tours and Le Beau Inter-America. Since there is no allegation that the *combined* retained earnings of the two companies was less than $876,432, the balance owed the Le Beaus, execution of the oral agreement need not have rendered either company insolvent. The Le Beaus argue that they cannot be held responsible for the fact that Universal, in breach of the alleged oral agreement, transferred the funds solely from Le Beau Tours rather than from both companies.

Finally, the Le Beaus contend that the fact that Robert S. Le Beau continued as an officer and director of Le Beau Tours and that other Le Beaus were employed by the company after the sale of the company to Universal is insufficient to establish their liability for the acts of the company. In support of this contention, the Le Beaus have presented the affidavit of Robert Le Beau that after the business had been sold, he was not permitted by Universal to participate in any of the financial dealings of the company.

Berman contends that the proposed amended complaint states a claim against the Le Beaus by setting forth the manner in which the retained earnings of Le Beau Tours were used to pay Universal's debt to the Le Beaus and to collateralize the letters of credit issued by Chemical to the Le Beaus pursuant to the oral agreement between Universal, Hui, Seyer and the Le Beaus. In addition, Berman contends that

Robert S. Le Beau must be held responsible for the conduct of Le Beau Tours because he was president during the relevant period. He concludes that summary judgment is inappropriate because material questions exist as to the time of the conveyances, the insolvency of the bankrupt, the consideration for the conveyances, and the various parties' intent with respect to the conveyances.

Berman's arguments are without merit. As the Le Beaus state, the complaint itself alleges that the oral agreement pertained to the retained earnings of *both* Le Beau Tours and Le Beau Inter-America. Berman concedes that on March 11, 1977, the retained earnings of both companies amounted to $876,432. (Affidavit of Michael Berman, p. 5). Thus, it is clear that compliance with the alleged oral agreement need not have rendered Le Beau Tours insolvent and that Berman's claim that the Le Beaus participated in a continuing fraud originating in the oral agreement and consummating in the transfer of funds to Chemical is inconsistent with the allegations of the complaint itself with respect to the oral agreement.[9]

■ Furthermore, there is no basis for recovering the allegedly fraudulent conveyances from the Le Beaus because there is no allegation that the Le Beaus received any property from Le Beau Tours in connection with the sale of their businesses. According to the proposed amended complaint, the Le Beaus received the money which Universal owed to them from Chemical, not Le Beau Tours. Pursuant to their independent contract with Chemical under the letters of credit, Chemical had an irrevocable obligation to pay the Le Beaus as the letters of credit came due, regardless of what later transpired between Chemical and Universal. *See Foreign Venture Ltd. Partnership v. Chemical Bank*, 59 A.D.2d 352, 399 N.Y. S.2d 114 (1st Dep't 1977). The allegation that Universal, the new owner of the companies, used the funds of Le Beau Tours to pay Universal's obligation to Chemical to provide security for the letters of credit

for conveyances of the property of Le Beau Tours. Since we find the Le Beaus' first argument persuasive, we do not rule on this contention.

9. In addition, a serious question exists whether Berman has presented sufficient evidence to

avoid summary judgment as to whether an oral agreement was in fact made. If no oral agreement was made, of course, Berman's position is even less tenable.

does not establish a basis for recovering from the Le Beaus. Even if Universal had reneged in its obligation to Chemical, the Le Beaus would have still received the money owed to them because Chemical, under the letters of credit, already had an irrevocable obligation to pay them. Thus, even assuming that the conveyances made from Le Beau Tours to Chemical to collateralize the letters of credit constituted fraudulent conveyances under either the Bankruptcy Act or the New York Debtor and Creditor Law (a proposition on which we make no ruling), the proposed amended complaint sets forth no basis for holding the *Le Beaus* liable, since they neither agreed that the payments would be made solely from the funds of Le Beau Tours nor received the payments from the funds of Le Beau Tours.

Finally, Berman's contention that Robert S. Le Beau must be held responsible for the conduct of Le Beau Tours during the time he served as president following the sale to Universal is impugned by the uncontradicted evidence that, during this period, Robert S. Le Beau did not participate in the financial dealings of the company. According to his affidavit supporting the Le Beau's motion, following the sale of the company, he was treated as a "virtual figurehead" (Le Beau Affidavit, p. 2), he had no access to the company's books and records, he had no knowledge of the financial workings of the company, and he had no knowledge of the relationship between Chemical and Universal with respect to the letters of credit. (Le Beau Affidavit, p. 5). Berman has not contested this evidence. In sum, there is no basis for holding Robert S. Le Beau liable for payments made by Le Beau Tours during the critical period.

### III.   *Illegal Dividends or Distributions*

Berman alleges that the purpose of the alleged oral agreement between the Le Beaus and Universal, Hui and Seyer was to enable the Le Beaus to receive the retained earnings of Le Beau Tours and Le Beau Inter-America "by the subterfuge of a sale of capital stock." (Proposed Amended Complaint, ¶ 14). The effect of this agreement, Berman argues, was the declaration

of a dividend or distribution in violation of § 510(a) of the New York Business Corporation Law, which makes the declaration or payment of a dividend or distribution illegal if it is made when the corporation is insolvent or if it would render the corporation insolvent.[10]

The Le Beaus argue that Berman has not stated a cause of action under § 510 because, at the time of the alleged dividend payments, the Le Beaus were not shareholders of the corporation and, therefore, the payments were not dividends or distributions within the ambit of § 510. This proposition is unpersuasive. Berman alleges that the oral agreement was made before the sale to Universal, at a time when the Le Beaus were officers and shareholders, and that the agreement constituted a declaration of a dividend or distribution. The fact that the Le Beaus were not shareholders when the payments were actually made is not dispositive since § 510 makes the declaration as well as the payment of a dividend or distribution illegal in the specified circumstances.

■ Be that as it may, Berman has failed to state a claim under § 510 for the same reasons that he failed to state a claim to recover the allegedly fraudulent conveyances from the Le Beaus. As discussed above, the alleged oral agreement pertained to the retained earnings of *both* Le Beau Tours and Le Beau Inter-America, and Berman concedes that the retained earnings of both companies amounted to $876,432. Therefore, even assuming that the oral agreement was made and that it constituted the declaration of a dividend or distribution under § 510, it was not made at a time when either company was insolvent nor would it have rendered either company insolvent as required by § 510.

### IV.   *Corporate Waste*

■ Berman alleges that the payments from Le Beau Tours used to collateralize the letters of credit constituted a waste of corporate assets in violation of the defendants' duties as officers and directors of the corporation.[11] However, of the Le Beaus, only Robert S. Le Beau was a director and

---

**10.**   See note 5 *supra.*

**11.**   See note 7 *supra.*

officer of the corporation during the time these payments were made and, as discussed above, he cannot be held liable because he did not participate in the financial workings of the company. Moreover, Berman cannot rely on the alleged oral agree-ment as an act of waste for which the Le Beaus can be held liable (as officers and directors of Le Beau Tours prior to the sale) because, as the complaint itself reveals, the alleged agreement was not complied with once Universal took control of Le Beau Tours.

### V. *Gross Disregard of Corporate Duties*

■ Berman also alleges that a series of payments made between March 11, 1977 and April 5, 1978 were made in gross disregard of defendants' duties as officers and directors. Since of the Le Beaus only Robert S. Le Beau was an officer and director during this period and he was not permitted to participate in the financial workings of the company, he cannot be held liable for the payments.

\*  \*  \*  \*  \*  \*

Berman's motion to amend his complaint as to the Le Beaus and Chemical is granted.[12]

Summary judgment is granted to the Le Beaus with respect to each claim against them in the amended complaint.

It is so ordered.

---

12. Chemical, the only other party served with Berman's motion to amend his complaint, has submitted no papers in opposition. Accordingly, Berman's motion to amend the complaint as to Chemical and the Le Beaus is granted and the motion for summary judgment considered on the basis of the amended complaint.