In re Daniel J. DEVANEY, as trustee under Chapter 11 of the Bankruptcy Code for CB & R (Holdings) Ltd., American Marine Industries, Inc., Chester, Blackburn & Roder, Inc., Chester, Blackburn & Roder (N.Y.), Inc., Pan Antilles Shipping Company, Current Trader Ltd., Atlantic Clipper Ltd., Atlantic Intrepid Ltd., Pan American Mall Line, Inc., Marine Terminals, Inc. and Linea Naviera Panatlantica, S.A., Debtors.

PANATLANTIC, INC., Current Marine, Inc., Chester, Blackburn & Roder (South Atlantic), Inc., Chester, Blackburn & Roder, Ltd., Panamerica Inc. and Pancaribe, Inc., debtors-in-Possession under Chapter 11 of the Bankruptcy Code, Plaintiffs,

v.

A.P. CHESTER, J.C. Sklaire, R.A. Chester, Jeremy Chester, John Lynch, Howard Morgan, Sheldon H. Kinney, Joseph Carroll, Paul A. Jasinski, John P. Love, Evangelos Alexander, John W. Battles, William Beylund, W.R. Blackburn, Alan Bouwmeester, R. Ross Camardella, Kevin Chester, Britt Chester, Kristine Chester, Kenneth Coleman, Frank Dapena, John Davidson, Peter Evelyn, P.K. Fung, Michele Grindlinger, Bruno Lehoucq, Ruth Lehoucq, Joseph Perez–Jones, Carmen Pizzaro, Ronald Rasmus, Wade Battles, Robert Shay, Joseph Sierra, Aline Sklaire, William Stewart, Perry Walter, Hill Betts & Nash, (In the capacity of Escrow Agent only), Grayson & Bock, Salomon Brothers, Inc., First Boston Commercial Corporation, First Boston Commercial Paper Corporation, Erik K. Klaussmann, III, and David Lindsay, Defendants.

No. 83 Civ. 8455(JFK).

United States District Court,
S.D. New York.

April 18, 1989.

Hahn & Hessen, New York City, for plaintiffs (Steven J. Mandelsberg, Barry M. Schkolnick, and Brett E. Wettick, of counsel).

Hill, Betts & Nash, New York City, for defendants, Group I, Group II and Group III Stockholders (Allan J. Graff and John F. Keating, of counsel).

## OPINION AND ORDER

KEENAN, District Judge:

This matter is before the Court on the motion of defendant Group I, Group II and Group III Stockholders (the "Stockholders") pursuant to Fed.R.Civ.P. 56 to dismiss the eighth claim for relief in the plaintiff Trustee's Fourth Amended Complaint. For the reasons set forth below, the Court denies the Stockholders' motion.

## BACKGROUND

The facts underlying this protracted litigation are amply presented in *Devaney v. Chester*, 813 F.2d 566 (2d Cir.1987) and *Devaney v. Chester*, [1986–87 Transfer Binder] Fed.Sec.L.Rep (CCH) ¶ 92,747, 1986 WL 5101 (S.D.N.Y. Apr. 29, 1986), and thus do not warrant repetition here. The Trustee's eighth claim for relief alleges that, pursuant to § 548(a)(2) of the Bankruptcy Code and §§ 273, 274 and 278 of the New York Debtor and Creditor Law, CB & R (Holdings), Ltd. ("CB & R") was the victim of a fraudulent conveyance when it paid $9,624,384 to the Stockholders for substan-tially all of the issued and outstanding stock of American Marine Industries, Inc. ("AMI"). The Trustee contends that the purchase constituted a fraudulent conveyance because (i) CB & R was insolvent at the time of the purchase, or was rendered insolvent by the purchase, and (ii) the value of the AMI stock transferred to CB & R by the Stockholders was not reasonably equivalent to the $9,624,384 purchase price. The facts pertinent to this motion are as follows.

The sale of 99.5% of AMI's outstanding common stock to CB & R was closed on November 24, 1982. The sale was made pursuant to a Stock Purchase Agreement dated November 5, 1982 between CB & R and the Group I Stockholders. *See* Trustee's Exh. A. The Stock Purchase Agreement set forth the terms and conditions of the sale and was executed by the Group I Stockholders and CB & R's principals, Erik K. Klaussmann, III and David Lindsay.

The First Boston Corporation ("First Boston") acted as CB & R's investment banker and advisor in this transaction. Prior to the execution of the Stock Purchase Agreement, First Boston, in a letter addressed to CB & R dated October 27, 1982, stated that it would "make available to [CB & R] adequate financial resources to conclude the purchase of [AMI]." Trustee's Exh. B. The letter provided that the Stockholders were entitled to rely on the above representation "as an inducement to execute and deliver the Agreement," and was authorized for distribution to the Stockholders.

On November 24, 1982, First Boston and CB & R entered into a loan agreement under which First Boston promised to provide the funds necessary to consummate the sale of AMI. In the first instance, the loan consisted of First Boston's issuance of a promissory note to the Stockholders for $9,624,384. To secure its loan, First Boston required CB & R to pledge all of AMI's capital stock to First Boston. *See* Trustee's Exh. D. First Boston paid the promissory note to the Stockholders in full on December 3, 1982.

## DISCUSSION

Fed.R.Civ.P. 56 entitles a party to summary judgment if it appears that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). The opposing party, in order to prevail, "must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). An issue is genuine if the evidence could allow a reasonable jury to reach a verdict for either side. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). In determining the motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *American Mfrs. Mut. Ins. Co. v. American B'casting-Paramount Theatres, Inc.,* 388 F.2d 272, 279 (2d Cir.1967), *cert. denied,* 404 U.S. 1063, 92 S.Ct. 737, 30 L.Ed.2d 752 (1972). All ambiguities must be resolved in favor of the non-moving party. *See Martin Ice Cream v. Chipwich, Inc.,* 554 F.Supp. 933, 935 (S.D.N.Y. 1983). Applying these principles to the matter at hand, the Court finds that disputed material facts sufficient to defeat the motion are present.

The Stockholders contend that summary judgment in their favor is appropriate because CB & R did not transfer any of its property or assets to the Stockholders in payment of the purchase price of the AMI stock. A transfer of CB & R's property, of course, is essential before the AMI transaction can be avoided under 548 of the Bankruptcy Code or the New York Debtor and Creditor Law. The Stockholders argue that since First Boston made the payment for the AMI stock out of its own funds, in accordance with its promissory note, the only "transfer" made by CB & R was the obligation it incurred to First Boston to repay the sum which First Boston paid to the Stockholders. They maintain that the October 27 letter in which First Boston represented that it would provide the funds necessary to purchase the AMI stock, and the promissory note issued to the Stockholders, created an independent obligation on First Boston's part to pay the Stockholders. If First Boston indeed assumed an independent obligation to pay the Stockholders, and the transferred assets were never the property of CB & R's estate, no claim of fraudulent conveyance can be asserted against the Stockholders. *See Berman v. LeBeau Inter-America, Inc.,* 509 F.Supp. 156, 160–61 (S.D.N.Y.), *aff'd,* 679 F.2d 872 (2d Cir.1981).

*Berman* involved the sale of a closely held corporation in a leveraged buy-out transaction for $1,200,000. The purchase price was partially payable by the buyer, Universal Tours, Inc. ("Universal"), with a promissory note for $870,000. The payment of that note was secured by an irrevocable letter of credit issued by Chemical Bank. At Chemical Bank's insistence, Universal collateralized the letter of credit by transferring cash assets of the acquired company, LeBeau Tours, to Chemical Bank. Chemical Bank subsequently paid the sellers $870,000 pursuant to the irrevocable letter of credit. The trustee in bankruptcy alleged that the sellers had received a fraudulent conveyance of the property of LeBeau Tours at a time when LeBeau Tours was insolvent. The court denied the trustee's claim for relief, holding that there was no transfer of property to the sellers by the insolvent debtor because the sellers had received the property and assets of Chemical Bank in payment of the promissory note:

"Furthermore, there is no basis for recovering the allegedly fraudulent conveyances from the LeBeaus [the selling shareholders] because there is no allegation that the LeBeaus received any property from LeBeau Tours [the insolvent debtor, which was the company acquired by Universal], in connection with the sale of their business. According to the proposed amended complaint, the LeBeaus received the money which Universal [the acquiring corporation] owed to them from Chemical, not LeBeau Tours. Pursuant to their independent contract with Chemical under the letters of credit, Chemical had an irrevocable obligation to pay the LeBeaus as the letters of credit came due, regardless of what later transpired between Chemical and Universal. The allegation that Universal, the new

owner of the companies, used the funds of LeBeau Tours to pay Universal's obligation to Chemical to provide security for the letters of credit does not establish a basis for recovering from the LeBeaus. Even if Universal had reneged in its obligation to Chemical, the LeBeaus would have still received the money owed to them because Chemical, under the letters of credit, already had an irrevocable obligation to pay them. Thus, even assuming the conveyances made from LeBeau Tours to Chemical to collateralize the letters of credit constituted fraudulent conveyances under either the bankruptcy act or the New York Debtor and Creditor law (a proposition on which we make no ruling), the proposed amended complaint sets forth no basis for holding the LeBeaus liable...."

*Berman*, 509 F.Supp. at 160–61.

The Stockholders argue that the October 27 letter in which First Boston represented that it would make available the funds necessary to purchase the AMI stock, coupled with First Boston's promissory note to the Stockholders, gave rise to an independent obligation on First Boston's part to pay the purchase price of the AMI stock. If this is the case, they are correct in asserting that First Boston's payment to the Stockholders from its own funds did not constitute a transfer of the debtor's property under § 548 of the Bankruptcy Code or the New York Debtor and Creditor Law. *See Berman, supra; Kupetz v. Continental Illinois Nat'l Bank and Trust Co. of Chicago*, 77 B.R. 754 (C.D.Cal.1987), *aff'd*, 845 F.2d 842 (9th Cir.1988).

*Berman* and *Kupetz* involved payments by banks pursuant to irrevocable letters of credit. Letters of credit, of course, create a primary liability to pay the beneficiary upon presentation of certain documents, regardless of the performance or non-performance of the underlying contract. *See Berman*, 509 F.Supp. at 160. A guarantee, on the other hand, creates a secondary obligation where "the guarantor is not liable unless the principal is bound." *Walcutt v. Clevite Corp.*, 13 N.Y.2d 48, 56, 241 N.Y.S.2d 834, 191 N.E.2d 894 (1963) (citation omitted). *Accord Pro–Specialties, Inc. v. Thomas Funding Corp.*, 812 F.2d

797, 799 (2d Cir.1987). The parties vigorously dispute which kind of obligation First Boston assumed under the October 27 letter and the subsequent promissory note. This dispute precludes a grant of summary judgment.

Because First Boston did not make payment pursuant to a letter of credit, the *Berman* case is not squarely on point. In order for its rule to apply, this Court would have to find as a matter of law that First Boston itself had an obligation to purchase the AMI stock, irrespective of what developed between the Stockholders and CB & R. The Court is unconvinced on the record before it that First Boston had assumed a primary obligation to purchase the stock and was not merely a guarantor of CB & R's obligation to purchase the shares under the Stock Purchase Agreement.

### CONCLUSION

For the reasons set forth above, the Stockholders' motion for summary judgment is denied.

SO ORDERED.