GENERAL MOTORS ACCEPTANCE CORPORATION, Plaintiff, v
MELVIN KALKSTEIN et al., Defendants and Third-Party
Plaintiffs-Respondents. GENERAL MOTORS CORP., PON-
TIAC DIVISION, Third-Party Defendant-Appellant.

First Department, April 17, 1984

**APPEARANCES OF COUNSEL**

*Barrington D. Parker, Jr.*, of counsel (*Kim J. Landsman*
and *C. Dennis Davenport* with him on the brief; *Parker*

*Auspitz Neesemann & Delehanty, P.C.,* and *Elmer W. Johnson,* attorneys), for third-party defendant-appellant.

*Stuart F. Gartner* of counsel (*Kenneth A. Bloom* with him on the brief; *O'Donnell, Fox, Gartner & Sobolewski, P.C.,* attorneys), for defendants and third-party plaintiffs-respondents.

OPINION OF THE COURT

MURPHY, P. J.

Plaintiff General Motors Acceptance Corporation (GMAC) sues to recover $79,914.29 upon the written guarantee made by defendants Marvin and Bernice Kalkstein. The Kalksteins unconditionally guaranteed the performance and payment of the full indebtedness of Blair Pontiac, Inc. (Blair), to GMAC. Marvin was president of and owned all the stock in Blair; Bernice was an officer in Blair. The guarantee was executed by the Kalksteins in their individual capacities on August 7, 1979. Marvin, as president of Blair, signed a dealer and service agreement (the agreement) with General Motors Corporation, Pontiac Division (GM) on August 10, 1979.

The Kalkstein's original third-party complaint against GM was dismissed by Justice Shainswit with leave to replead. Justice Shainswit found that the allegations of fraud had not been pleaded with sufficient detail (CPLR 3016, subd [b]). Thereafter, the Kalksteins served an amended third-party complaint which contained two causes of action. The first cause alleged that, if GMAC recovered on the action-in-chief, the Kalksteins were entitled to recover for the fraudulent conduct of GM set forth in the second cause. The Kalksteins charged under the second cause that GM's officials made various representations and promises to them that were never honored. The Kalksteins alleged, *inter alia,* that GM failed (i) to supply four to five "X body" cars each week; (ii) to remove "large body cars" which sold slowly and (iii) provide financial support.

As a result of this fraud and misrepresentation on GM's part, the Kalksteins maintained that they were personally damaged. They were induced to purchase a Pontiac dealership from Page Pontiac, Inc. (Page). Moreover, the Kalksteins stressed that they had (i) advanced over

$300,000; (ii) guaranteed loans in excess of $200,000; (iii) devoted their full time and energy and (iv) incurred professional expenses, all on behalf of Blair. They sought (i) $750,000 in compensatory damages, (ii) $1,000,000 in lost profits, and (iii) $2,000,000 in punitive damages.

GM again moved to dismiss the amended third-party complaint under CPLR 3211 and 3212 on the ground that the Kalksteins did not have legal capacity to sue. GM asserted that the two causes in the amended third-party complaint originally belonged to Blair. However, GM noted that Blair had made an assignment for the benefit of creditors on April 2, 1980. Thus, neither the Kalksteins nor Blair could assert any action for fraud or breach of contract. Justice Grossman found that he was bound by the "law of the case" since Justice Shainswit had previously ruled against GM on this point. He, therefore, denied the motion without prejudice to renewal upon completion of discovery.

■ ■ At the outset, it should be noted that we may review this record without restriction. We are not bound by the "law of the case". (*Klein v Smigel,* 44 AD2d 248, affd 36 NY2d 809.) It should be further emphasized that GM's motion was made before issue was joined on the amended third-party complaint. Therefore, the branch of GM's motion which sought summary judgment must be denied as premature. (CPLR 3212, subd [a]; *Alro Bldrs. & Contrs. v Chicken Koop,* 78 AD2d 512; *Milk v Gottschalk,* 29 AD2d 698.) Upon the branch of the motion brought under CPLR 3211, the allegations in the amended third-party complaint will be viewed most favorably to the Kalksteins to determine whether they have pleaded a valid basis for relief. The affidavit submitted by Marvin will be considered for purposes of remedying any defect in the third-party complaint (*Rovello v Orofino Realty Co.,* 40 NY2d 633).

In the amended third-party complaint, the Kalksteins do not specify the capacity in which they are suing. They do not allege that they are suing in their individual capacities as guarantors. Likewise, they do not aver that they are suing as corporate officers on behalf of the corporation. Marvin does not explicitly assert that he is suing as sole

shareholder in Blair. In his affidavit, Marvin does claim that he was fraudulently induced by the wrongful conduct of GMAC and GM to buy Page. He also maintains that, once discovery is completed, he will show a "special duty" and a "personal service contract" between himself and GM. Because of this ambiguity in the amended third-party complaint and the supporting papers, each possible cause of action will be explored.

Generally, a creditor cannot recover from a guarantor where the creditor has practiced any fraud to induce the guarantor to assume the obligation of guarantee (57 NY Jur, Suretyship and Guaranty, § 97, p 341; *Weichert v American Nat. Bank & Trust Co.,* 39 AD2d 819; *Matter of First Citizens Bank & Trust Co. v Estate of Sherman,* 250 App Div 339). The leading case of *Walcutt v Clevite Corp.* (13 NY2d 48) does not hold to the contrary. In *Walcutt,* the guarantor never alleged that he was induced to enter into his guarantee as a result of the creditor's misrepresentations. Therefore, the Court of Appeals disallowed the guarantor's defense based upon fraud. (*Walcutt v Clevite Corp., supra,* p 55.)

In the amended third-party complaint, the Kalksteins inartistically allege that they were fraudulently induced into executing the guarantee by the misrepresentations of certain GM employees. Viewed most favorably to the Kalksteins, the amended third-party complaint thus states a meritorious cause of action in fraud. The Kalksteins thus have "standing" to bring the two causes predicated upon fraud.

If the amended third-party complaint is read in conjunction with Marvin's affidavit, it would seem that he is also attempting to allege, as an alternative cause, that GM breached a "personal service contract" with him — individually. Even though Marvin does not allege that he is the sole shareholder of Blair, that fact would seem to underlie this alternative claim for relief.

The documentary evidence indicates that Marvin signed the agreement with GM in his corporate capacity as president of Blair. That agreement can in no way be construed as a contract with him personally. Moreover, he may not sue GM simply because he is the sole shareholder of Blair.

An individual shareholder has no right to bring an action in his own name and in his own behalf for a wrong committed against the corporation. (*Fifty States Mgt. Corp. v Niagara Permanent Sav. & Loan Assn.* 58 AD2d 177, 179.) Similarly, Marvin and his wife have no individual right to sue on Blair's behalf because they are officers in that corporation.

Even if it were assumed that the Kalksteins, individually, could sue GM on behalf of Blair, the amended third-party complaint would fail upon the evidence in this record. The documentary proof indicates that Blair made a general assignment for the benefit of creditors on April 2, 1980. Thus, Blair's own right of action, if any, has passed to the assignee. (*Matter of Alfred Frank, Inc.* [*Melniker*], 278 App Div 862; 28 NY Jur, Insolvency, § 26.) The Kalksteins, individually, may not advance a corporate cause that Blair has previously assigned.

Accordingly, the order of the Supreme Court, New York County (Grossman, J.), entered on July 11, 1983, which denied GM's entire motion to dismiss the third-party complaint pursuant to CPLR 3211 and 3212, should be modified, on the law, by striking all claims from the complaint except the Kalksteins' individual claim based upon fraud to the extent to which they seek to recover from General Motors whatever amount they may be required in the main action to pay to General Motors Acceptance Corporation on their guarantee. As modified, the order should be affirmed, without costs.

MILONAS, J. (dissenting). The question here is whether guarantors may assert an independent cause of action belonging to their principal as a defense or counterclaim against a creditor on the principal contract when they are sued alone on the guarantee. The fact that in the instant matter, defendants have, as third-party plaintiffs, brought into the case General Motors Corporation, Pontiac Division, a subsidiary of plaintiff, as a third-party defendant does not alter the situation that what defendants Marvin and Bernice Kalkstein are attempting to do is allege fraud and misrepresentation as defenses to the action commenced by plaintiff General Motors Acceptance Corporation to recover on the Kalksteins' guarantee.

Defendants and third-party plaintiffs, Marvin and Bernice Kalkstein, allege fraud and misrepresentation on the part of the third-party defendant General Motors Corporation, Pontiac Division, specifically:

"a. That Blair's term under the Dealer Sales Service Agreement ('the Agreement') would be for a term of five years, with said term commencing upon signing of a Dealer Agreement.

"b. That Blair would receive at least 4 - 5 'X-body' motor vehicles per week;

"c. That the 'large body' slow selling motor vehicles located at Page would be removed as quickly as possible;

"d. That motor vehicles would not be shipped to Blair unless ordered by it;

"e. That the Kalksteins' investment and financial statements were in accordance with G.M. and GMAC guidelines;

"f. That G.M. and GMAC were extremely anxious to have Page cease being a G.M. dealer;

"g. That G.M. and GMAC would provide Blair with sufficient financial support."

There is a long-established doctrine which holds that "a guarantor when sued alone by the creditor cannot avail himself of an independent cause of action existing in favor of his principal as a defense or counterclaim" (*Walcutt v Clevite Corp.,* 13 NY2d 48, 55; see, also, *Ettlinger v National Sur. Co.,* 221 NY 467; *Elliott v Brady,* 192 NY 221; *Lasher v Williamson,* 55 NY 619; and *Gillespie v Torrance,* 25 NY 306). According to the Court of Appeals in *Walcutt v Clevite Corp.,* (*supra,* p 55): "The reasons underlying this rule * * * may be summarized by the proposition that a guarantor may not take upon himself the election of remedies which rightfully belongs solely to his principal. Thus, a guarantor may not interpose his principal's defense of fraud since by so doing he would deprive the principal of his independent right to affirm or disaffirm * * * Likewise, he may not assert his principal's claim of breach of warranty since 'he might thus bar a large claim in canceling a small one' ".

The only exception to this proposition is that a guarantor may always claim a failure of consideration. In the view of the court in *Walcutt (supra)*, this is because the guarantor is only bound when, and to the extent that, the principal is bound. As the Court of Appeals has declared, where "the consideration fails, either partially or entirely, neither the principal nor the guarantor is accountable for anything which has not been received." (*Walcutt v Clevite Corp., supra*, p 56.) Further, the various Appellate Division departments, when confronted with such a situation, have almost consistently followed the foregoing rule. (*H.H. & F.E. Bean, Inc. v Travelers Ind. Co.*, 67 AD2d 1102; *Taylor & Jennings v Bellino Bros. Constr. Co.*, 57 AD2d 42; *Rhodia, Inc. v Nat Steel*, 32 AD2d 753.) This department, on the other hand, in two relatively recent cases, has inexplicably cited *Walcutt v Clevite Corp. (supra)*, as authority for the statement that a guarantor or surety is "entitled to assert any defenses or counterclaims that were available to the principal obligor" (*Durable Group v De Benedetto*, 85 AD2d 524; see, also, *Milliken & Co. v Gans*, 82 AD2d 781).

The claims urged by the Kalksteins do not involve a failure of consideration and would not, as a matter of law, be available to them as defenses or counterclaims to their obligation under the guarantee if these claims belonged to the principal, Blair Pontiac, Inc., rather than to defendants personally. However, in *Walcutt v Clevite Corp. (supra, pp 56-57)*, the court, after concluding that the codefendant therein, Frederick Richmond, the president and sole stockholder of Walco Electronics Company, which ultimately purchased the assets of plaintiffs' former corporations from defendant Clevite Corporation, was entitled to raise the defense of partial failure of consideration, went on to state: "We need not, however, rest our determination solely upon the above ground. All the papers submitted to us leave little doubt that Richmond and Walco are truly one and the same. It was Richmond who took part in every step of the negotiations leading to the purchase of the phonograph needle business from Clevite. Walco was merely a corporation formed at the last minute to take title to the assets. Richmond was and still is its president and sole stockholder. Any fraud which was committed on Walco to induce

its purchase must perforce have been committed on Richmond. And, by the same token, any defense interposed by Richmond must be deemed to have been the implied consent of Walco. When the principal's defense is asserted against the creditor under these same conditions, it is perfectly proper (Restatement, Security, § 133)."

Marvin Kalkstein was at all times the president and sole shareholder of Blair Pontiac. Like Richmond in *Walcutt* (13 NY2d 48, *supra*), he participated in every step of the negotiations which culminated in the extension of credit by General Motors Acceptance Corporation for the purchase and subsequent operation of Blair Pontiac. Any representations made to Blair Pontiac were of necessity made to Kalkstein as well, and any fraud committed against one was also committed against the other. None of the purported fraudulent misrepresentations were made to Kalkstein in his individual capacity; rather, they were all made to him in his role as president and sole shareholder of Blair Pontiac. Moreover, the contract between Kalkstein and General Motors specifically provided that the agreement "be construed as being in the nature of a personal service agreement" and that the continuation of the business relationship between General Motors and the dealership was conditioned upon Blair Pontiac being managed and owned by Kalkstein. It is, therefore, evident that Marvin Kalkstein and Blair Pontiac were, in effect, one and the same entity. Thus, under the principle enunciated in *Walcutt v Clevite Corp. (supra)*, the defenses or counterclaims raised by defendants third-party plaintiffs would ordinarily have been sufficient to defeat a motion to dismiss.

However, in April of 1980, Blair Pontiac, operated and wholly owned by Marvin Kalkstein, executed a general assignment for the benefit of creditors. The validity of the assignment is undisputed, and in it, Blair Pontiac assigned away all "claims, demands, property and effects of every description". Since Kalkstein and Blair Pontiac were one and the same, and the alleged fraud was not committed against Kalkstein personally, Kalkstein/Blair Pontiac's defenses or counterclaims arising out of the supposedly fraudulent inducement of the third-party defendant, General Motors Corporation, and the latter's failure to honor

certain commitments, passed to the assignee. (See *Emergency Beacon Corp. v Polish,* 71 AD2d 995.) Consequently, the claims recited by the Kalksteins on their amended third-party complaint are no longer available to them, and the third-party complaint should be dismissed.

KUPFERMAN, SANDLER and ALEXANDER, JJ., concur with MURPHY, P. J.; MILONAS, J., dissents in an opinion.

Order, Supreme Court, New York County, entered on July 11, 1983, modified, on the law, by striking all claims from the complaint except the Kalksteins' individual claim based upon fraud to the extent to which they seek to recover from General Motors whatever amount they may be required in the main action to pay to General Motors Acceptance Corporation on their guarantee, and as modified, the order is affirmed, without costs and without disbursements.