[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff, First Charter National Bank (hereafter "First Charter"), is the holder of an unconditional guaranty of a debt owed by the Midland Textile Corporation (hereafter "Midland") in the amount of two hundred fifty thousand ($250,000.00) dollars. Defendants, Robert A. Ross and Ann D. Ross, executed the unconditional guaranty of the loan and also executed a mortgage in favor of the bank to secure the guaranty. Midland was a corporation set up in North Carolina in 1978 by Robert Ross, president, and others. When Midland failed to make payments under the note, the bank instituted the present action to foreclose the mortgage securing the Rosses' guaranty of the Midland note.
In 1979, Midland was a failing company and was unable to pay its debts, but was a large employer of persons in the area. The predecessor to First Charter, Concord National Bank, was familiar with the operations of Midland and thus encouraged Midland to apply for a SBA loan. Said loan was offered by the bank but guaranteed by the Small Business Administration.
Although the loan was ultimately approved, Midland never repaid any portion of the loan. For several years thereafter, the SBA took no action against any of the guarantors, and in 1983 the loan was reassigned to First CT Page 10392 Charter.
By complaint dated February 18, 1987, First Charter instituted the present action to foreclose the mortgage securing the Rosses' guaranty. On October 1, 1987, as amended on September 12, 1990, defendant, Ann Ross, filed an answer and asserted ten special defenses to the foreclosure action. Ms. Ross's fifth special defense alleges that the guaranty and mortgage securing the guaranty were obtained by fraud on the part of First Charter, acting in concert with Robert Ross, the third party defendant in this action and/or Midland Textiles, Inc. Defendant, Robert Ross, was defaulted for failure to appear on July 31, 1987.
The trial in this matter commenced on September, 1990, and continued to diverse dates thereafter until the trial was completed.
In opposition to the present foreclosure action, defendant, Ann Ross, asserts ten (10) special defenses. In addition, Ms. Ross also filed a cross-complaint against Robert Ross alleging that he fraudulently induced her into signing the guaranty and mortgage securing the guaranty. On September 1, 1989, a default was entered on the cross-complaint against Robert Ross for his failure to appear. With respect to the defendant, Ann Ross's ten (10) special defenses, the court need only address the fifth special defense as it is dispositive on the issue of the foreclosure action concerning Ms. Ross.
Defendant argues in her fifth special defense that First Charter and her then husband, Robert Ross, acting in concert, fraudulently induced her into signing the guaranty and the mortgage deed securing said guaranty. "Generally, a creditor cannot recover from a guarantor where the creditor has practiced any fraud to induce the guarantor to assume the obligation of guaranty." General Motors Acceptance Corp. v. Kalkstein, 101 N.Y. App. Div. 102, 474 N.Y.S.2d 493, 495 (1984); see also Dorsey v. Mancuso, 23 Conn. App. 629, 633-34
(1990); Kavarco v. T.J.E., Inc., 2 Conn. App. 294, 298-99
(1984). The evidence presented at trial, particularly Mr. Ross's admissions, clearly established that Mr. Ross fraudulently misrepresented to his then wife the contents and legal ramifications of the guaranty and mortgage deed securing said guaranty in an effort to obtain her signature on those documents. The question at this point, however, is whether First Charter participated in or had knowledge of Mr. Ross's fraudulent acts.
It is axiomatic that the knowledge of an agent is the CT Page 10393 knowledge of the principal. E. Udolf, Inc. v. Aetna Casualty Surety Co., 214 Conn. 741, 745-46 (1990); West Haven v. United States Fidelity Guaranty Co., 174 Conn. 392,395 (1978).
"`Agency is defined as `the fiduciary relationship which results from manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act . . . .'" Beckenstein v. Potter Carrier, Inc., 191 Conn. 120,132-33 (1983); citing Restatement (Second), 1 Agency, Sec. 1; McLaughlin v. Chicken Delight, Inc., 164 Conn. 317, 322
(1973). The existence of an agency relationship is a question of fact for the trial court. Beckenstein v. Potter Carrier, Inc., supra, 133; see also Botticello v. Stefanovicz, 177 Conn. 22, 25-26 (1979).
Based upon the testimony presented at trial, the court finds that an agency relationship existed between Mr. Ross and First Charter. The guaranty and mortgage deed securing said guaranty were of obvious benefit to the bank, yet testimony indicated that First Charter never contacted Ms. Ross concerning her agreement to guaranty the loan. Instead, First Charter relied entirely upon Mr. Ross to obtain Ms. Ross's signature on the guaranty and mortgage deed securing said guaranty. "`An essential ingredient of agency is that the agent is doing something at the behest and for the benefit of the principal.'" Beckenstein v. Potter Carrier, Inc., supra, 133. In this capacity, the court finds Mr. Ross to be an agent of the bank. Hence, knowledge of Mr. Ross's fraudulent misrepresentations are imputed to First Charter by way of the agency relationship.
"[W]here there has been fraud in the inducement of the contract, the contract is voidable or subjects the defrauding party to a suit for damages." Kavarco v. T.J.E., Inc., supra, 298. "The party defrauded has the option of electing either to rescind the contract or to claim damages for the breach of the contract." Id., 299, citing, Pacelli Bros. Transportation, Inc. v. Pacelli, 189 Conn. 401,409-10 (1983). Thus, in the present foreclosure action, First Charter is not entitled to enforce the guaranty agreement as against Ms. Ross, and judgment shall enter in favor of the defendant, Ann Ross.
Defendant, Robert Ross, is, however, liable under the guaranty based on the default which was entered against him by the court (Moraghan, J.) on July 31, 1987. Thus, Mr. Ross's one-half interest in the mortgage securing the guaranty is subject to foreclosure. CT Page 10394
With respect to the extent of liability under the guaranty, the court recognizes that the following portion of the mortgage deed provides that "Grantor is willing . . . to provide to Grantee the security for his said undertaking as guarantor in any amount not to exceed TWO HUNDRED FIFTY THOUSAND AND no/100 DOLLARS ($250,000)." (See Mortgage Deed dated July 5, 1979.) (Emphasis added.) Nevertheless, in at least three other paragraphs, the mortgage deed explicitly provides for reasonable attorney fees and interest in the event that a foreclosure action is necessary. With respect to the interpretation of contracts, it is well established that a contract is to be construed as a whole and all relevant provisions should be considered together. Barnard v. Barnard, 214 Conn. 99, 109 (1990). "The intention of the parties to a contract is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. The question is not what intention existed in the minds of the parties but what intention is expressed in the language used." Ives v. Willimantic, 121 Conn. 408,411 (1936). (Emphasis added.)
The court finds that the language of the contract is clear. In addition to the two hundred fifty thousand ($250,000.00) dollars of principal, First Charter is also entitled under the terms of the guaranty and mortgage deed securing said guaranty to reasonable attorney fees as well as interest on the principal at a rate of 12 percent per annum. Accordingly, the court finds Mr. Ross's liability under the guaranty and mortgage deed to be as follows:
Principal $250,000.00
 Interest 12% per annum (7/11/79 — 12/26/91) 373,750.00
Attorney fees 18,000.00
Total $641,750.00
Pursuant to Connecticut General Statutes, Sec. 49-24, the court orders foreclosure by decree of sale on that certain parcel of property described in the mortgage deed executed by Robert Ross on July 5, 1979. Furthermore, pursuant to Connecticut General Statutes, Sec. 49-25, the court fixes the day for sale of the property to be six months from the date of this decision, June 26, 1992.
Counsel are ordered to appear on Tuesday, January 7, CT Page 10395 1992 at 9:30 a.m. so the court may take further input concerning the terms of the foreclosure sale.
RIEFBERG, J.