Scileppi, J.
The three individual plaintiffs and the deceased (hereinafter collectively referred to as plaintiffs) were, with one minor exception, sole stockholders of several corporations engaged in the manufacture and sale of phonograph needles and related items. In February, 1959 plaintiffs sold their stock-holdings in those corporations to defendant Clevite Corporation in exchange for shares of Clevite stock. As part of the transaction, plaintiffs entered into separate written agreements not to compete with Clevite for 10 years, and plaintiff Lowell Walcutt further agreed to consult and advise with respect to the phonograph needle business, as requested, during that period. In return for these latter promises, Clevite agreed to *53 pay Lowell Waleutt $20,000 per year and the remaining plaintiffs $10,000 each per year, payments to be made in equal quarter-annual installments. The agreements were made assignable but expressly provided that Clevite was to remain liable for the payments if the assignee defaulted.
In September, 1960 Clevite entered into an agreement with defendant Richmond to sell the assets of plaintiffs’ former corporations. Among other provisions, Richmond agreed to form a corporation to which all of the assets, including plaintiffs’ agreements, were to be transferred. The consideration was to be paid by the new corporation part in cash and part by the assumption of certain liabilities, including the obligations under the plaintiffs’ agreements. Clevite also agreed to deliver certain warranties at the closing.
Thereafter Richmond caused Walco Electronics Company, Inc. (Walco) to be formed as a New Jersey corporation, and became its president and sole stockholder. The closing occurred on September 23, 1960, at which time plaintiffs’ noncompetition agreements were assigned to and assumed by Walco. In addition, Richmond personally executed a written guarantee to Clevite that Walco would make the payments as they would become due to plaintiffs, and that, if Walco defaulted, Richmond would make the payments himself. Subsequent to the closing, Walco paid each plaintiff the $2,500 quarterannual installment due on September 30, 1960. Walco did not pay Lowell Waleutt the balance of the installment due him on that date, nor did it make payments on any installments due plaintiffs thereafter.
Shortly after the closing, a dispute arose between Walco and Clevite, and in February, 1961 Walco instituted an action against Clevite in the Federal District Court for the Southern District of New York demanding $400,000 damages on two alternative causes of action, one for fraud and the other for breach of warranty arising out of the sale. None of the plaintiffs is a party to that action, which is still pending.
In May, 1961 plaintiffs commenced the instant action against Clevite and Richmond to recover through the quarter ending March 31, 1961 the unpaid installments due under their non-competition agreements. The suit against Clevite is based directly on the noncompetition agreements and, against Rich *54 mond, on his personal guarantee to Clevite. Walco, as a foreign corporation not doing business in New York, was not amenable to process and consequently is not a party to this action.[1]
Richmond’s answer, inter alia, asserted as affirmative defenses and setoffs that Clevite made fraudulent representations to Richmond and Walco concerning the inventory transferred, and that, relying upon such representations, Walco and Richmond were thereby u induced to have Walco purchase the said inventories and other assets ’ ’. It is further alleged that as a result both Walco and Richmond were damaged in a sum far exceeding plaintiffs’ claims. Similar affirmative defenses and setoffs are included in paragraphs relating to breaches of warranty given by Clevite to Walco and Richmond. Special Term granted summary judgment in favor of plaintiffs against both Clevite and. Richmond and in favor of Clevite on its cross claim over against Richmond under section 264 of the Civil Practice Act. The Appellate Division unanimously affirmed and we granted leave to appeal.
We are all in agreement that summary judgment was properly granted against Clevite. Accordingly, our inquiry will be directed to whether Special Term erred in finding that no triable issue was raised by Richmond’s defenses.
We note initially that plaintiffs’ claims against Richmond arise out of a transaction entirely separate from the sale of their business to Clevite. Richmond made no agreement with plaintiffs. His undertaking was part of the subsequent sales agreement between Clevite and Walco, and was merely to guarantee that Walco’s obligations to Clevite would be met. Plaintiffs’ claims, therefore, are based upon the theory that they are third-party beneficiaries of Richmond’s guarantee to Clevite, and, as such, are subject to all the equities between the parties to that agreement (Detmer Woolen Co. v. Van Horn, 59 Misc. 163).
Before this court, Richmond argues that he was personally induced to enter into his contract of guarantee by virtue of *55 Clevite’s fraud upon him. Doubtless, a fraud so committed by a creditor upon a guarantor would enable the latter to disaffirm, and such disaffirmance, in turn, would defeat the rights of third-party beneficiaries of the contract. The difficulty with this argument is that nowhere in his answer does Richmond assert that he was induced to enter into his contract of guarantee because of Clevite’s misrepresentations. The fraud is alleged only as the inducement to Walco’s purchase of the assets. As a result, Richmond’s belated assertion of personal fraud is unavailing, and we must look solely to those defenses raised below to determine if a triable issue exists.
Stripped to its essentials, Richmond’s defense is that Cl evite grossly exaggerated its inventory on the sale to Walco, with the result that Walco received $400,000 less in inventory than it had bargained for. These averments of inventory shortage present, in essence, the defense of partial failure of consideration, regardless of the terminology employed in the answer. Thus narrowed, the question for determination becomes whether a guarantor, when sued alone, may avail himself of the defense of a partial failure of consideration arising out of the main contract.
The situation is readily distinguishable from cases in which the rule was fashioned that a guarantor when sued alone by the creditor cannot avail himself of an independent cause of action existing in favor of his principal as a defense or counterclaim (Ettlinger v. National Sur. Co., 221 N. Y. 467; Gillespie v. Torrance, 25 N. Y. 306; Lasher v. Williamson, 55 N. Y. 619; Elliott v. Brady, 192 N. Y. 221). The reasons underlying this rule are extensively discussed in both the Ettlinger and Gillespie cases (supra), and may be summarized by the proposition that a guarantor may not take upon himself the election of remedies which rightfully belongs solely to his principal. Thus, a guarantor may not interpose his principal’s defense of fraud since by so doing he would deprive the principal of his independent right to affirm or disaffirm (Ettlinger v. National Sur. Co., supra.) Likewise, he may not assert his principal’s claim of breach of warranty- since ‘ ‘ he might thus bar a large claim in canceling a small one ” (Gillespie v. Torrance, supra, p. 311). In all of these instances the claim is deemed to be an independent cause of action existing in favor of the principal, which he *56 alone may or may not assert in what he deems to be his best interest.
There can be no doubt that a guarantor, when sued alone by the creditor, can successfully resist by showing that the creditor, on his part, totally failed to perform his obligations to the principal. In other words, the guarantor may always assert a total failure of consideration. This is because the guarantor is not liable unless the principal is bound (4 Williston, Contracts [rev. ed.], § 1213). By the same reasoning, the guarantor should be liable for no more than is his principal where there is a partial failure of consideration. By asserting such partial failure of consideration the guarantor does not avail himself of an independent claim belonging to the principal nor does he arrogate to himself a right of election which his principal enjoys. Where the consideration fails, either partially or entirely, neither the principal nor the guarantor is accountable for anything which has not been received. The question posed here has never before been squarely presented to this court. It has, however, been held below that a surety, when separately sued, may interpose as a partial defense the creditor’s nonperformance of all the obligations of the contract toward the principal (Forsythe v. United States Fid. S Guar. Co., 130 Misc. 569). And this court has had occasion, in dicta, to remark that “ an indorser or surety may always, where the contract has not been assigned, show a failure, partial or total, of consideration of his principal’s contract which he is called upon to perform ” (Gillespie v. Torrance, 25 N. Y. 306, 308-309, supra). We hold, therefore, that Richmond’s defense of partial failure of consideration was properly asserted, thereby raising a triable issue which precluded summary judgment.
We need not, however, rest our determination solely upon the above ground. All the papers submitted to us leave little doubt that Richmond and Walco are truly one and the same. It was Richmond who took part in every step of the negotiations leading to the purchase of the phonograph needle business from Clevite. Walco was merely a corporation formed at the last minute to take title to the assets. Richmond was and still is its president and sole stockholder. Any fraud which was committed on Walco to induce its purchase must perforce have been committed on Richmond. And, by the same token, any *57 defense interposed by Richmond must be deemed to have had the implied consent of Walco. When the principal’s defense is asserted against the creditor under these same conditions, it is perfectly proper (Restatement, Security, § 133).
The judgment should be modified by reversing that portion which granted summary judgment in favor of plaintiffs as against Richmond and in favor of Clevite on its cross claim against Richmond, and, as so modified, affirmed.

. Under common-law practice Clevite notified Walco that the latter would be liable over to 'Clevite if plaintiffs recovered, and, pursuant to such “ vouching in”, Walco .accepted and undertook the defense and appeal of Clevite. As respondent on the cross claim against Richmond, however, Clevite is still represented by its own attorneys.