**KANSALLIS–OSAKE–PANKKI, Plaintiff,**

v.

**Pentti J.K. KOURI, Defendant.**

**No. 93 Civ. 0776 (RWS).**

United States District Court, S.D. New York.

July 22, 1993.

Milbank, Tweed, Hadley & McCoy, New York City (Charles G. Berry, Peter A. Bellacosa, of counsel), for plaintiff.

Rosenman & Colin, New York City (Gerald A. Rosenberg, Barry Michael Okun, Kenneth C. Brown, of counsel), for defendant.

### OPINION

SWEET, District Judge.

Plaintiff Kansallis–Osake–Pankki ("KOP") has moved for default judgment against Defendant Pentti J.K. Kouri ("Kouri") and alternatively for summary judgment pursuant to Rule 56, Fed.R.Civ.P. For the reasons set forth below, both motions are denied at this time.

### The Parties

KOP is a prominent Finnish bank authorized to do business in New York and maintaining an office here. Kouri is a Finnish citizen domiciled in Greenwich, Connecticut. He is a majority shareholder of KC Holding Oy ("KC–OY"), a Finnish company formerly known as Kouri Capital Oy.

### Prior Proceedings

This action was brought in New York State Supreme Court, New York County, by the filing on January 8, 1993 of a summons and motion for summary judgment in lieu of complaint, pursuant to N.Y.Civ.Prac.L. & R. § 3213, and a supporting affidavit. The summons and § 3213 motion were served on defendant by mail on January 8, 1993, in accordance with the terms of the written guarantee, the enforcement of which was the relief sought by the motion.

On February 8, 1993, Kouri served a notice of removal of the action to this Court, and has filed opposition papers to the summary judgment motion.

Upon removal of this action to this Court, Kouri's counsel wrote a letter to KOP's counsel requesting that KOP file a complaint, because the State Court device for a "motion for summary judgment in lieu of complaint" is not provided for by the Federal or Local Rules, a request rejected by KOP's counsel. Following KOP's service of its State Court motion, KOP and Kouri, as well as their respective counsel, were engaged in ongoing communications regarding the disposition of certain collateral pursuant to an agreement related to the one at issue here, which according to Kouri's counsel had (and has) the potential of mooting this dispute. KOP moved ex parte for a default judgment against Kouri based on his failure to respond in a timely manner to the State Court motion, while also noticing that motion anew in this Court.

The motions were heard on April 7, 1993 and considered fully submitted after the submission of post hearing correspondence on June 11, 1993.

### The Facts

As will shortly become all to apparent, the relationship between the parties is complicated and of long standing. What follows is a description to be gleaned from the affidavits submitted in connection with the motion for summary judgment, the submitted Rule 3(g) statements, and the memoranda submitted by skilled counsel for both parties. Since this action is in its preliminary stage, these findings are perforce subject to review and revision in the light of any further proceedings.

Kouri has or had a controlling interest in various related companies (the "Kouri Entities") including KC–OY, a company organized in 1986 under the laws of Finland. KC–OY functioned as an investment vehicle for the purchase and sale of securities and an investment and merchant banking firm in Finland.

From 1986 through early 1990, Kouri and KOP entered into a series of general partnerships (the "Partnerships"), organized under the law of Finland or the Virgin Islands. The Partnerships invested in the securities of corporations listed on the Helsinki stock exchange. KOP was to provide the capital needed for the Partnerships' activities, share in the Partnerships' profits, and bear the entire risk of the Partnerships' losses.

The investment activities of three of the four Partnerships were successful. The August Group General Partnership ("August") did poorly, and as of the spring of 1990, August's portfolio of stocks reflected net cap-

ital losses of approximately 250 million Finnish Markka ("FIM"), approximately $62.5 million at the time. In June 1990 Kouri and KOP entered into a written agreement (the "June 1990 Agreement") to provide additional capitalization in exchange for certain undertaking.

In May 1991, Kouri commenced a prior action in this Court and an affiliated entity, *Kouri Capital, Inc. and Pentti Kouri v. Kansallis–Osake–Pankki,* 91 Civ. 3458 (JFK) (the "Prior Action"), seeking, among other relief, damages in an amount not less than $148,750,000 and a declaratory judgment that the guarantee given by the Kouri Entities in the June 1990 Agreement was null and void as having been induced by KOP's fraudulent misrepresentation.

Shortly after the Prior Action was commenced, KOP and Kouri engaged in settlement discussions and by a settlement agreement dated July 25, 1991 (the "Settlement Agreement"), the Prior Action was settled and on August 15, 1991, the Prior Action was dismissed with prejudice.

Under the Settlement Agreement KOP undertook to:

(a) Assume the losses of the August Partnership;

(b) Purchase from KC–OY an unsecured seven-year convertible debenture of FIM 85,999,680 (the "Convertible Debenture"), with FIM 20 million of the purchase price to be placed in a "blocked account" at KOP in KC–OY's name (the "Blocked Account"), and

(c) Make a secured loan in the amount of FIM 60 million to KC–OY for a seven-year period (the "Secured Loan").

The FIM 20 million in the Blocked Account was to be available to KC–OY for investment purposes, subject to KOP's reasonable approval of each proposed investment, with KOP to have a "protective security" in each investment.

As part of the Settlement Agreement, KOP selected collateral for the Secured Loan from numerous pieces of art owned by Kouri (the "Artwork") and certain securities (collectively, the "Collateral").

KC–OY applied approximately FIM 90.17 million of the proceeds from the Convertible Debenture and the Secured Loan to purchase the Artwork from Kouri. KOP assigned a collateral value (the "Collateral Value") to the Artwork equal to 50% of its appraised value or, in the case of certain works that had not been appraised, a value equal to 50% of the sum of (a) the price Kouri had paid for each work, and (b) certain carrying charges, *i.e.,* insurance and warehousing costs.

Under the Settlement Agreement, Kouri provided KOP with a "deficiency guarantee" of up to FIM 21 million for the Secured Loan in favor of KOP of up to FIM 21 million (the "Guarantee") on July 25, 1991, the same day the Settlement Agreement was executed. The Guarantee was a guarantee of collection, not payment, on the Secured Loan up to the amount of FIM 21 million.

Within one month after the Settlement Agreement and the Guarantee were signed, KOP advanced FIM 43.2 million of the Secured Loan in the amounts of FIM 3.2 million on August 16, 1991 and FIM 40 million on August 22, 1991.

At approximately the same time, KC–OY notified KOP of its intention to draw down the remaining FIM 16.8 million of the Secured Loan. Shortly thereafter, KOP stated that it would not make the loan to KC–OY unless Kouri gave KOP a further guarantee.

On September 19, 1991 Kouri signed the guarantee (the "Additional Guarantee") upon which this action is based, in order to make funds available from the FIM 16.8 Loan, to avoid the necessity of filing in bankruptcy by KC–OY.

In September 1991, with KOP's approval, KC–OY sold two Artworks through a gallery in New York for a combined price of approximately $450,000—approximately $297,500 in excess of the Collateral Value of each of the two Artworks. These sales proceeds were properly deposited into the Cash Collateral Account. KOP, however, refused to allow KC–OY to draw upon these excess funds.

When it was unable to withdraw the $298,-000 in Excess Cash Proceeds, KC–OY sold at distressed prices a car, some of its comput-

ers, some marketable securities, and its development rights in a Helsinki office building in which it had an ownership interest. These sales generated revenues of approximately FIM 2.5 million. By the end of January 1992, KC–OY encountered a crisis of liquidity. From then until the time it filed for bankruptcy on May 8, 1992, KC–OY was unable to pay any of its bills, including the wages of its employees.

The most valuable piece of KC–OY's Artwork was a painting by the noted British painter, Francis Bacon, which had a Collateral Value of $2.25 million (the "Bacon Painting"). In or about October 1991, KC–OY received an offer from a New York gallery owner to purchase the Bacon Painting for $2.5 million, $225,000 more than its Collateral Value. Kouri communicated this offer to KOP and requested that KOP approve the sale. KOP failed to approve the sale and the offer lapsed, at approximately the same time that KOP refused to approve an offer from a New York gallery to purchase from KC–OY a work by a Mexican artist, Francisco Zuniga.

On May 4, 5 and 7, 1993, various works were sold netting $2,207,943, including $1,212,500 for the Bacon Painting.

### Discussion

#### I. *Default Judgment Is Denied*

■ KOP has relied on the provisions of Rule 81(c), Fed.R.Civ.P., for the proposition that Kouri was required to answer or oppose KOP's summary judgment motion within 20 days of service or receipt or within 5 days of removal, and as set forth above, none of these time periods have been observed. The Rule states as follows:

In a removed action in which the defendant has not answered, the defendant shall answer or present the other defenses or objections available under these rules within 20 days after the receipt through service or otherwise of a copy of the initial pleading setting forth the claim for relief upon which the action or proceeding is based, or within 20 days after the service of the summons upon such initial pleading, then filed, or within 5 days after the filing of the

petition for removal, whichever period is longest.

The issue presented therefore is whether or not the Rule applies in this circumstance to a motion or only to a pleading as stated in the Rule and if it does apply, whether or not it is appropriate to open the default, given the uncertainty surrounding the issue.

As this Court has observed in the past, our Circuit has not favored disposition by way of default:

Defaults, often referred to as the weapon of last resort, are not favored, especially when the case presents issues of fact. A court should resolve all doubts in favor of a determination on the merits.

*Brown v. De Filippis,* 695 F.Supp. 1528, 1530 (S.D.N.Y.1988) (citing *In re Martin–Trigona,* 763 F.2d 503, 505 (2d Cir.1985), and *Meehan v. Snow,* 652 F.2d 274, 277 (2d Cir.1981)); *accord Traguth v. Zuck,* 710 F.2d 90, 94 (2d Cir.1983); *John v. Sotheby's, Inc.,* 141 F.R.D. 29, 35 (S.D.N.Y.1992).

The only authority cited by KOP in support of its motion for a default judgment is *Savarese v. Edrick Transfer & Storage, Inc.,* 513 F.2d 140 (9th Cir.1975), a Ninth Circuit opinion written by former Chief Judge Lumbard sitting by designation, which involved a removed complaint rather than a motion for summary judgment in lieu of complaint and so offers no guidance in the present context.

Rule 81(c) by its terms applies to answers or motions to dismiss in response to removed pleadings, not to papers in opposition to removed motions like the State Court motion at issue here. Moreover, the time periods for responses to summary judgment motions, whether removed or not, are not set forth in that Rule, but rather appear in Rule 56, Fed.R.Civ.P., as well as in Local rules of this district and the rules of the particular judges. No applicable rule required Kouri to respond to KOP's motion until a notice of motion had been served making that motion returnable before this Court.

In the two cases cited by KOP for the proposition that a Federal Court may entertain a motion for summary judgment in lieu of complaint removed from State Court, the motion had been renewed or noticed in Fed-

eral Court before the Court considered it. *See Miller v. Steloff*, 686 F.Supp. 91, 93 (S.D.N.Y.1988); *Istituto Per Lo Sviluppo Economico Dell' Italia Meridionale v. Sperti Prod., Inc.*, 47 F.R.D. 310, 312 (S.D.N.Y. 1969); *accord Marine Midland Bank v. Smith*, 482 F.Supp. 1279, 1281 (S.D.N.Y. 1979) (after removal of case commenced pursuant to N.Y.Civ.Prac.L. & R. § 3213, plaintiff made a federal court motion for summary judgment), *aff'd without op.*, 636 F.2d 1202 (2d Cir.1980).

In addition, the letter of Kouri's counsel, requesting the service of a complaint following removal, can reasonably be construed as a request for an enlargement of time. Kouri's counsel clearly indicated in that letter a desire to set a schedule with KOP's counsel, suggesting that "[p]erhaps after a judge has been assigned to the matter, we should jointly request a conference to sort out where [to] go from here."

Finally, Kouri's counsel suggested that KOP serve a complaint so that Kouri could set forth all of his related counterclaims in a single action.

Thus, under these circumstances, no default has occurred warranting judgment for KOP.

## II. *Genuine Issues Of Material Fact Exist To Bar Summary Judgment*

█ Fact issues concerning consideration prevent a grant of summary judgment on a claim for breach of contract. As the First Department has stated, "[i]f proved, lack of consideration is a 'perfectly viable defense,'" the presentation of fact issues relating to which prevents a grant of summary judgment. *Manufacturers Hanover Trust Co. v. L.N. Properties Inc.*, 174 A.D.2d 383, 383, 570 N.Y.S.2d 576, 576 (1st Dep't 1991) (quoting *Fopeco, Inc. v. General Coatings Technologies, Inc.*, 107 A.D.2d 609, 610, 483 N.Y.S.2d 1015, 1016 (1st Dep't 1985) (summary judgment on guarantee denied because of fact issue concerning lack of consideration)).

Here, an issue of fact has been raised as to whether the only consideration that Kouri received for the Additional Guarantee was KOP's promise to do that which it was already bound to do. It is alleged that at the time Kouri executed the Additional Guarantee, he had already given KOP the Guarantee—the only guarantee that KOP was entitled to from him under the Settlement Agreement. All that KOP did in return for the Additional Guarantee was to make the Loan to KC–OY, as it was arguably already obligated to do under the Settlement Agreement in any event.

An issue of fact exists as to whether KC–OY received full consideration from KOP on the Loan Agreement. "Where the consideration fails [on the underlying agreement], either partially or entirely, neither the principal nor the guarantor is accountable for anything which has not been received." *Walcutt v. Clevite Corporation*, 13 N.Y.2d 48, 56, 241 N.Y.S.2d 834, 838 (1963).

The record of this motion establishes that, while KOP undertook to lend KC–OY FIM 16.8 million "in return for" the Additional Guarantee, KOP, *inter alia*, withheld the FIM 20 million it was holding as security in the Blocked Account, which it had promised to make available to KC–OY for investment purposes allegedly unreasonably, thereby constituting a partial failure of consideration on the underlying Loan.

KOP has suggested that its forbearance in forcing KC–OY into bankruptcy constituted a benefit to Kouri. However, this contention also presents a factual conflict.

KOP's motion for summary judgment on the Additional Guarantee accordingly should be denied, material factual issues having been established. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Silver v. City Univ. of New York*, 947 F.2d 1021, 1022 (2d Cir.1991); *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991).

Finally, it is apparent that no discovery has been had and that the issues are complex and of longstanding. The opportunity to permit at least limited discovery is also a basis for denying the KOP motion for summary judgment at this time. *See Schlesinger Inv. Partnership v. Fluor Corp.*, 671 F.2d 739, 743 (2d Cir.1982); *Quinn v. Syracuse*

*Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980); *Deleu v. Scaife*, 775 F.Supp. 712, 716 (S.D.N.Y.1991).

*Conclusion*

Accordingly, the motions for a default judgment and for summary judgment are denied at this time with leave granted to renew after initial discovery has been completed.

It is so ordered.