Joseph **SALOMON**, individually and doing business as Salomon Realty Company, Plaintiff,

v.

**BURR MANOR ESTATES, INC.,** Jefferson Woods Estates, Inc., and Sal Malguarnera, Defendants.

Sal Malguarnera, Third–Party Plaintiff,

v.

Jeffrey Feldman and Barry Feldman, Third–Party Defendants.

Jeffrey Feldman and Barry Feldman, Fourth–Party Plaintiffs,

v.

Louis Castellano, Fourth–Party Defendant.

No. 07–cv–5021 (ADS)(AKT).

United States District Court, E.D. New York.

March 15, 2011.

Novak Juhase & Stern LLP by Kim S. Juhase, Esq., of Counsel, Mountainside, NJ, Attorneys for the plaintiff.

Reynolds, Caronia, Gianelli, Hagney, La Pinta & Quatela, LLP by James N. Salvage, Jr., Esq., Anthony M. LaPinta, Esq., Scott J. Kreppein, Esq., of Counsel, Hauppauge, NY, Attorneys for the defendant and third-party plaintiff, Sal Malguarnera.

Steinberg, Fineo, Berger & Fischoff, P.C. by Laurie Sayevich Horz, Esq., of Counsel, Woodbury, NY, Attorneys for the third-party defendants and fourth-party plaintiffs, Jeffrey Feldman and Barry Feldman.

No appearance since previous Attorney was terminated: Burr Manor Estates, Inc., Jefferson Woods Estates, Inc., Louis Castellano.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiff in this case, Joseph Salomon, seeks summary judgment against the

defendant Sal Malguarnera to recover on Malguarnera's guarantee of a $500,000 loan that Salomon made to the defendant Burr Manor Estates, Inc. ("Burr Manor"). The plaintiff also seeks summary judgment dismissing the defendant Malguarnera's counterclaim against Salomon for aiding and abetting two officers of Burr Manor in breaching their fiduciary duties to the corporation. The case is before the Court on diversity jurisdiction. For the reasons that follow, the Court denies the plaintiff's motion to recover on Malguarnera's guarantee, and grants the plaintiff's motion to dismiss Malguarnera's counterclaim.

## I. BACKGROUND

The Court has issued two previous decision in this case, *Salomon v. Burr Manor Estates, Inc.*, No. 07–cv–5021, DE# 27 (E.D.N.Y. Oct. 21, 2008) and *Salomon v. Burr Manor Estates, Inc.*, 635 F.Supp.2d 196 (E.D.N.Y.2009) (issued Jul. 11, 2009). Familiarity with those decisions is assumed.

As the Court related in its previous decisions, this case centers on a failed business venture to develop residential housing in Suffolk County, New York. The present motion involves only two of the numerous claims and counterclaims presently pending among the various parties involved with that venture. Thus, the Court's discussion of the background of this case focuses on facts relevant to those two claims.

Sometime around October of 2005, the defendant Malguarnera, the fourth-party defendant Louis Castellano, and the third-party defendants Jeffrey and Barry Feldman agreed to enter business together to develop two residential parcels of land located in Commack and St. James, in Suffolk County, New York. According to the parties' pleadings, the division of labor among the business partners was as follows: Louis Castellano, a contractor, was to manage the construction of new homes on the properties. Barry and Jeffrey Feldman, a father and son who owned an accounting business called Feldman & Company, and were to manage the venture's finances. For his part, Sal Malguarnera is variously described as either being involved in obtaining bank financing for the project or as being involved in the construction of the homes.

To carry out their plan, these four individuals formed two New York corporations, called Burr Manor Estates, Inc. ("Burr Manor") and Jefferson Woods Estates, Inc. ("Jefferson Woods"). Each of the four took a personal 25% interest in each corporation, except for Louis Castellano, who allegedly substituted his wife, Catherine Castellano, as the named owner of his shares. There is some discrepancy as to whether all four shareholders served as officers of the two corporations, but all appear to agree that Barry and Jeffrey Feldman served as president and vice-president of the corporations.

The venture was ultimately not a complete success, and the business partners now assert numerous claims against each other. Nevertheless, the present lawsuit does not stem from a direct conflict between the owners of the business. Rather, the plaintiff in this case is a fifth individual, Joseph Salomon, who allegedly loaned approximately $1.8 million in cash to Burr Manor and Jefferson Woods. In short, Salomon asserts that he was never repaid the money he loaned to the two corporations. Salomon seeks recovery on these debts from Burr Manor and Jefferson Woods. However, in addition and important to the present motion, he also seeks to recover on the debts from Malguarnera, who Salomon asserts personally guaranteed each debt. Salomon similarly asserts that Catherine Castellano, Barry Feldman, and Jeffrey Feldman also guaranteed

these debts, but he has withdrawn his original cause of action to recover from Catherine Castellano, and at no point has he asserted causes of action against Barry or Jeffrey Feldman.

Although Salomon alleges that he was unpaid for several loans he made to Burr Manor and Jefferson Woods, his present motion for summary judgment relates only to the first alleged loan he made, for $500,000, to Burr Manor. The parties dispute a number of important details concerning this first loan, but the undisputed facts are as follows.

Prior to November 2005, Joseph Salomon was a long-time client of the Feldmans' accounting firm, Feldman & Company. Sometime before the end of November 2005, Salomon discussed with Barry Feldman the possibility of loaning money to Burr Manor and Jefferson Woods, though the exact nature of their communications is unclear. As a result of this discussion, Salomon ultimately on November 30, 2005 wired $500,000 to an account held by Barry and Jeffrey Feldman's accounting firm, Feldman & Company. Twenty-two days later, on December 22, 2005, Barry Feldman executed a $500,000 promissory note on behalf of Burr Manor and in favor of Salomon. The Court will refer to this note as "December 2005 Note", and the loan it memorialized as the "December 2005 Loan". Below Barry Feldman's corporate endorsement of the December 2005 Note also appeared the individual signatures of Barry Feldman, Jeffrey Feldman, Sal Malguarnera, and Louis Castellano, who each thereby agreed to jointly and severally guarantee the full value of the $500,000 loan. According to Salomon and the Feldmans, the $500,000 that Salomon wired to Feldman & Company on November 30, 2005 was the principal of the December 2005 Loan. While the Feldmans further as-

sert that this cash was then used exclusively for the benefit of Burr Manor and Jefferson Woods, the $500,000 was never transferred into an account held by Burr Manor or Jefferson Woods.

Regardless of the fate of the $500,000 wired to Feldman & Company on November 30, 2005, the parties appear to agree that Burr Manor timely made all or most of the required interest payments on the December 2005 Note. However, on the debt's accrual in June 2007, the $500,000 principal was not repaid. On November 13, 2007, Jeffrey Feldman signed two "Confessions of Judgment" on behalf of Burr Manor and Jefferson Woods, stating that Burr Manor and Jefferson Woods had failed to repay the December 2005 Note, among several other loans from Salomon. The confession of judgment also admitted that the entities had failed to make certain interest payments to Salomon, though it is unclear that any of these missed payments relate to the December 2005 Note. Shortly after Jeffrey Feldman executed the confessions of judgment, the Clerk of the Court for New York Supreme Court, Suffolk County entered a judgment on November 20, 2007 for $1,831,250.00 in Salomon's favor against both Burr Manor and Jefferson Woods. The judgments reflected and included the $500,000 principal in the December 2005 Note, and perhaps a relatively small amount of interest due on that note.

On December 4, 2007, approximately two weeks after judgment was entered in New York Supreme Court, Suffolk County, Salomon commenced the present action against Burr Manor, Jefferson Woods, Malguarnera, and Catharine Castellano. In his second cause of action in his present complaint, Salomon seeks recovery from Malguarnera on the December 2005 Note based on Malguarnera's guarantee. Salo-

mon presently seeks summary judgment dismissing this cause of action.

A number of additional disputed facts concerning the December 2005 Note form the basis for Malguarnera's opposition to the plaintiff's summary judgment motion. According to Malguarnera, not only were the funds from the December 2005 Note never transferred into a bank account held by Burr Manor, but those funds were also not used to otherwise benefit the corporation. Malguarnera further asserts that Salomon knew that the Feldmans intended to misuse these funds. Malguarnera also maintains that, even if Salomon didn't know about the Feldmans' alleged malfeasance, Salomon is nevertheless responsible for it because the Feldmans acted as his agent in making the December 2005 Loan.

Along with denying any liability for the December 2005 Note, Malguarnera has also asserted a counterclaim against Salomon for aiding and abetting the Feldmans' breaches of fiduciary duty to Burr Manor and Jefferson Woods. Malguarnera filed this counterclaim on March 19, 2008, asserting, essentially, that Salomon was aware that the Feldmans were looting Burr Manor and Jefferson Woods, and that Salomon aided this scheme by wiring loan proceeds directly to Feldman & Company rather than to the legal beneficiaries of those loans.

Now, along with his motion for summary judgment on his second cause of action, Salomon also moves for summary judgment dismissing Malguarnera's counterclaim cause of action for aiding and abetting breaches of fiduciary duty. Salomon denies that he aided and abetted the Feldmans in allegedly breaching their fiduciary duties, and also maintains that Malguarnera has no standing to directly assert this claim against him.

## II. DISCUSSION

### A. Standard on a Motion for Summary Judgment

It is well-settled that summary judgment under Fed.R.Civ.P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" within the meaning of Fed.R.Civ.P. 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 202 (2d Cir.1995) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam), and *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989)).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). However, the nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Summary judgment is appropriate when the moving party can show that "lit-

tle or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

## B. As to the Plaintiff's Motion for Summary Judgment to Recover on the December 2005 Note

The parties in this case essentially agree that Malguarnera executed a guarantee on the December 2005 Note in favor of the plaintiff, and that the plaintiff has not been paid what is due under that note. That being the case, the plaintiff has established a facial claim to recover from Malguarnera on the December 2005 Note. The question of whether the plaintiff is entitled to summary judgment on that claim therefore turns on whether Malguarnera has any available defenses to the plaintiff's claim.

In his opposition papers, Malguarnera has articulated essentially two defenses to the plaintiff's claim. First, he asserts that there was no consideration for the December 2005 Note, because the principal of this loan was never transmitted to the debtor, Bun–Manor. In connection with this assertion, Malguarnera also maintains that the Feldmans served as agents for Salomon for purposes of disbursing the principal of the loan, and that even if the Feldmans acted against Salomon's interest in keeping the $500,000 principal for themselves, Salomon must bear the consequences of this act. For his second defense, Malguarnera asserts that the Feldmans, as agents for Salomon, fraudulently induced him into guaranteeing the December 2005 Note.

With respect to Malguarnera's fraudulent inducement defense, the Court finds that this defense has not been properly plead, and, perhaps, has already been waived. However, as the Court finds that there are genuine issues of material fact with respect to Malguarnera's defense of

lack of consideration, the Court need not analyze in detail Malguarnera's assertion of fraudulent inducement.

██ Turning, then, to Malguarnera's lack of consideration defense, the Court begins with the general understanding that, "there can be no doubt that a guarantor, when sued alone by the creditor, can successfully resist by showing that the creditor, on his part, totally failed to perform his obligations to the principal. In other words, the guarantor may always assert a total failure of consideration." *Walcutt v. Clevite Corp.*, 13 N.Y.2d 48, 56, 241 N.Y.S.2d 834, 191 N.E.2d 894 (1963); *see also, e.g., Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 602 (2d Cir.2005); *Culver v. Parsons*, 7 A.D.3d 931, 933, 777 N.Y.S.2d 536 (3rd Dep't 2004). Thus, to the extent that there was no consideration for the December 2005 Note, Malguarnera is not liable on the guarantee he executed.

Whether there was consideration for the December 2005 Note may be analyzed by reviewing two questions: (1) Did Burr Manor receive the $500,000 loan principal, either actually or constructively?, and (2) If Burr Manor did not receive the loan proceeds, is Salomon's wiring of the $500,000 principal to Feldman & Company nevertheless sufficient to serve as consideration?

The Court finds that there are genuine questions of material fact as to the first question, namely, whether Burr Manor received the $500,000 loan principal. There is no dispute here that the loan proceeds were never transferred into an account held by Burr Manor. To be sure, Jeffrey Feldman has testified that Burr Manor had constructive control of these funds in spite of the fact that they were held in a Feldman & Company account. Jeffrey Feldman also asserts that the funds were exclusively used for the benefit of Burr

Manor and Jefferson Woods. However, Malguarnera contests these assertions, and there has been no evidence presented that shows either party's position on these issues to be obviously correct. Thus, there are triable issues of fact with respect to whether Burr Manor received the principal of the December 2005 Loan.

■ The second question, whether Salomon's transfer of funds to Feldman & Company is nevertheless sufficient consideration, is a more complex issue. Salomon contends that, regardless of what Barry or Jeffrey Feldman did with the proceeds of his loan after Feldman & Company received them, Salomon's transfer of $500,000 was good consideration for the December 2005 Note. According to Salomon, Barry and Jeffrey Feldman were cloaked in the authority of Burr Manor as its president and vice-president, and Salomon was therefore entitled to rely on the Feldmans' apparent authority to direct where to send the loan proceeds—even if that authority was being misused. *See Citibank, N.A. v. Nyland (CF8) Ltd.*, 878 F.2d 620, 624 (2d Cir.1989) ("a principal is liable to third parties for the acts of an agent operating within the scope of his real or apparent authority"). According to Salomon, his delivery of funds to Feldman & Company at the direction of the president and vice-president of Burr Manor was therefore valid consideration for the December 2005 Note.

Malguarnera's opposition papers do not appear to directly address this argument. Rather, Malguarnera argues separately that the Feldmans were actually *Salomon's* agent for purposes of distributing the funds of the December 2005 Loan, and that the Feldmans' failure to transfer the loan funds to Burr Manor is therefore attributable to Salomon. In support of this proposition, Malguarnera points to Salomon's complaint, in which Salomon states that the Feldmans agreed with him that "the loan proceeds [being held by Feldman & Company] would not be distributed until [Barry Feldman] obtained the required executed documents and delivered them to the plaintiff." (Compl., ¶ 9.) Salomon also states in his complaint that, in transferring the $500,000 principal to the Feldmans before receiving a promissory note, Salomon understood that the Feldmans would "make all the arrangements" related to the loan, including drafting and executing promissory notes. (Compl., ¶ 10.) Malguarnera maintains that the Feldmans' agreement to hold the loan funds for Salomon while acting on his behalf to obtain documentation of the loan established an agency relationship between Salomon and the Feldmans. Malguarnera then concludes that, if the Feldmans were Salomon's agents for the purpose of the transfer of the loan funds to Burr Manor, then the Feldmans' failure to make that transfer is attributable to Salomon, as the Feldmans' principal. *See Citibank, N.A.*, 878 F.2d at 624.

■ Generally, agency in New York is defined by three essential elements: "[1]the manifestation by the principal that the agent shall act for him, [2] the agent's acceptance of the undertaking and [3] the understanding of the parties that the principal is to be in control of the undertaking." *Cabrera v. Jakabovitz*, 24 F.3d 372, 386 (2d Cir.1994) (internal quotations omitted). In light of this law, it is the Court's opinion that there are genuine issues of fact as to whether the Feldmans acted at least in part as agent for Salomon in the consummation of the December 2005 Loan. Taking the facts in the best light for the non-moving party, the Feldmans appear to have acted as the consummate escrow agent for Salomon—namely, at Salomon's direction, they agreed to hold the $500,000 loan principal until the December 2005 Note was executed. This simple act could

arguably satisfy all three elements of agency—a request by a principal, an agreement to act by the agent, and an understanding that the principal's direction governs the agent's acts. Salomon opposes this contention primarily by asserting that he had insufficient control over the Feldmans to establish them as his agents. In Salomon's words, "[o]nce I wired the money to Feldman and Co. I had nothing further to do with it." (Salomon Aff., ¶ 11.) However, in the Court's view, Salomon's assertion, while certainly a valid issue for trial, is not determinative in the resolution of this summary judgment motion. Again, taking the facts in the best light for Malguarnera, Salomon may have exercised sufficient control over the Feldmans to establish an agency relationship when he obtained an agreement from the Feldmans that they would distribute the loan funds only after a promissory note was executed.

Of course, the presence of issues of fact as to whether the Feldmans acted as Salomon's agent with regard to this note does not lessen the fact that the Feldmans were also agents of Burr Manor. However, the details of the arrangements made between Salomon and the Feldmans in organizing the December 2005 Loan are unclear, as are the circumstances of the disbursement of the loan principal from the Feldmans' account. It therefore appears reasonable to conclude from the facts in this record that the Feldmans were acting solely as agents for Salomon when directing Salomon to wire the money into their account, and when later disbursing—or failing to disburse—that principal. In light of this factual scenario, the Court finds that there are genuine issues of material fact as to whether the asserted failure of consideration for the December 2005 Note may be attributed to Salomon.

In addition, the Court finds that there are also genuine issues of fact as to another related theory that may provide a defense to Salomon's claim. As suggested above, Salomon maintains that there was no reason for him to believe that the Feldmans were acting against the interests of Burr Manor in connection with the December 2005 Loan. However, taking the facts in the best light for Malguarnera, the Court finds that, contrary to Salomon's assertions, there are genuine issues of fact on this issue, and that this could provide a valid defense to Salomon's claim. *See Citibank, N.A.*, 878 F.2d at 624 (suggesting that "a third party who is aware that the agent is acting in his own interest, and not in the principal's interest, assumes the risk of the agent's disloyalty", and citing *Bertran Packing, Inc. v. Transworld Fabricators, Inc.*, 50 A.D.2d 542, 543, 375 N.Y.S.2d 335, 337 (1st Dep't 1975)).

Salomon himself states that Barry Feldman directed him to wire the December 2005 Loan proceeds to an account controlled by Feldman & Company, and not to an account controlled by the corporate debtor, Burr Manor. It is true that the interactions between Salomon, the Feldmans, and the other shareholders of Burr Manor appear to have been informal. However, it is the Court's opinion that the fact that the Feldmans directed Salomon to wire the loan proceeds to *their* account rather than to the *debtor's* account is enough to at least raise a triable issue of fact as to whether Salomon should have known of any alleged disloyalty by the Feldmans.

Therefore, finding that there are genuine issues of material fact as to whether the plaintiff may recover against Malguarnera on the December 2005 Note, the Court denies the plaintiff's motion for summary judgment on his cause of action to recover against Malguarnera on that note.

**C. As to the Plaintiffs Motion for Summary Judgment Dismissing Malguarnera's Counterclaim for Aiding and Abetting a Breach of Fiduciary Duty**

■ Malguarnera has asserted a counterclaim against Salomon for aiding and abetting Barry and Jeffrey Feldman in breaching their fiduciary duties to Burr Manor and Jefferson Woods. The primary thrust of this counterclaim is that, by transmitting loaned funds to the Feldmans' account rather than directly to Burr Manor or Jefferson Woods, Salomon aided the Feldmans in their alleged effort to misappropriate these corporations' assets for their own benefit.

Salomon's first basis for moving for summary judgment dismissing Malguarnera's counterclaim is that Malguarnera has no standing to directly assert a claim against him for aiding and abetting a breach of fiduciary duty. Having reviewed the law and the parties' submissions on this issue, the Court agrees with Salomon that Malguarnera does not have standing to bring this cause of action directly.

■ As a general matter, shareholders in New York corporations may not sue third parties directly for harms those third parties have caused to a corporation. *See, e.g., Solutia Inc. v. FMC Corp.,* 385 F.Supp.2d 324, 331 (S.D.N.Y.2005) (citing *Abrams v. Donati,* 66 N.Y.2d 951, 953, 498 N.Y.S.2d 782, 489 N.E.2d 751 (1985) as stating that "[f]or a wrong against a corporation a shareholder has no individual cause of action, though he loses the value of his investment or incurs personal liability in an effort to maintain the solvency of the corporation."). This applies equally to claims based on a corporate officer's alleged breach of fiduciary duty. *See, e.g., Bank of America Corp. v. Lemgruber,* 385 F.Supp.2d 200, 224 (S.D.N.Y.2005) ("A corporate officer or director generally owes a fiduciary duty only to the corporation over

which he exercises management authority, and any breach of fiduciary duty claims arising out of injuries to the corporation in most cases may only be brought by the corporation itself or derivatively on its behalf," citing *Abrams,* 66 N.Y.2d at 953, 498 N.Y.S.2d 782, 489 N.E.2d 751.). It follows that the same limitation applies to claims based on a third party's alleged aiding and abetting of a breach of fiduciary duty owed to a corporation.

Here, Malguarnera asserts that Salomon aided and abetted the Feldmans in breaching fiduciary duties that they owed to Burr Manor and Jefferson Woods. However, because the Feldmans' fiduciary duties were owed to Burr Manor and Jefferson Woods—and not to Malguarnera—this claim may be brought only by those corporations, or derivatively by Malguarnera. The Court therefore concludes that Malguarnera has no standing to bring a direct claim against Salomon for aiding and abetting a breach of fiduciary duty.

■ The Court notes that a shareholder may sue directly for breach of a fiduciary duty that that "results from a violation of a duty owing to the stockholder from the wrongdoer, having its origin in circumstances independent of and extrinsic to the corporate entity." *Fifty States Management Corp. v. Niagara Permanent Sav. and Loan,* 58 A.D.2d 177, 396 N.Y.S.2d 925, 927 (4th Dep't 1977); *New Castle Siding Co. v. Wolfson,* 97 A.D.2d 501, 502, 468 N.Y.S.2d 20 (2d Dep't 1983); *Solutia Inc.,* 385 F.Supp.2d at 331. Thus, if the Feldmans owed Malguarnera a fiduciary duty that was independent of the duty they owed to Burr Manor and Jefferson Woods, then Malguarnera would have standing to sue for aiding and abetting a breach of this duty. However, Malguarnera identifies no independent duty owed to him, and neither can the Court identify such a duty. To the extent that the Feld-

mans might have owed a fiduciary duty to Malguarnera by virtue of his guarantee of the December 2005 Loan, the Court finds that any such duty did not arise independently from the fiduciary duty that the Feldmans owed to the corporate debtors themselves. *See Koal Industries Corp. v. Asland, S.A.*, 808 F.Supp. 1143, 1164 (S.D.N.Y.1992) ("[plaintiff], as guarantor of $2 million of the Coal Group's obligations to BPA, is not in a traditional fiduciary relationship with the corporate officers and directors of the Coal Group"). Thus, this exception to the general rule does not apply to Malguarnera.

Finding that Malguarnera has no standing to assert his counterclaim for aiding and abetting a breach of fiduciary duty, the Court grants the plaintiffs motion for summary judgment dismissing this counterclaim for lack of standing.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the plaintiff's motion for summary judgment on his second cause of action, to recover on the December 2005 Note, is denied; and it is further

**ORDERED** that the plaintiff's motion for summary judgment dismissing the defendant Malguarnera's counterclaim for aiding and abetting a breach of fiduciary duty is granted on the basis of lack of standing; and it is further

**ORDERED** that the parties are directed to appear before this Court for a pretrial conference on Tuesday, March 29, 2011 at 9:00 a.m.

**SO ORDERED.**