Integrity Real Estate Consultants v Re/Max of N.Y., Inc. (2023 NY Slip Op 00848)

Integrity Real Estate Consultants v Re/Max of N.Y., Inc.

2023 NY Slip Op 00848

Decided on February 15, 2023

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 15, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

FRANCESCA E. CONNOLLY, J.P.
PAUL WOOTEN
JOSEPH A. ZAYAS
LILLIAN WAN, JJ.

2019-06925
2019-07405
2019-07406
2019-09360
 (Index No. 8794/07)

[*1]Integrity Real Estate Consultants, etc., plaintiff-appellant,
v
Re/Max of New York, Inc., defendant third-party plaintiff-respondent, et al., defendants; Carl E. Lavorata, et al., third-party defendants-appellants.

The Lepore Law Group, New York, NY (Lauren B. Lepore and Linda M. Wayner of counsel), for plaintiff-appellant and third-party defendants-appellants.
Law Office of Matthew F. Didora, P.C., Garden City, NY, for defendant third-party plaintiff-respondent.

DECISION & ORDER
In an action, inter alia, to recover damages for breach of contract and violation of General Business Law § 340, the plaintiff and the third-party defendants appeal from (1) a decision of the Supreme Court, Nassau County (Leonard D. Steinman, J.), dated June 25, 2018, (2) an order of the same court dated April 3, 2019, (3) a decision of the same court dated May 10, 2019, and (4) a judgment of the same court entered June 10, 2019. The order denied the motion of the plaintiff and the third-party defendants pursuant to CPLR 4404(b) to set aside the decision dated June 25, 2018, made after a nonjury trial. The judgment, upon the decision dated June 25, 2018, upon the order, and upon the decision dated May 10, 2019, made after a hearing to determine the amount of attorneys' fees due to the defendant third-party plaintiff, is in favor of the defendant third-party plaintiff and against the plaintiff and the third-party defendants dismissing the complaint and the counterclaims of the third-party defendants, and awarding the defendant third-party plaintiff the principal sum of $521,240.
ORDERED that the appeals from the decisions and the order are dismissed, without costs or disbursements; and it is further,
ORDERED that the judgment is modified, on the law and the facts, by deleting the third decretal paragraph thereof, and substituting therefor a provision dismissing the counterclaims and the third-party causes of action of the defendant third-party plaintiff; as so modified, the judgment is affirmed, without costs or disbursements.
Initially, the appeals from the decisions must be dismissed, as no appeal lies from a decision (see Schicchi v J.A. Green Constr. Corp., 100 AD2d 509, 509-510). The appeal from the order must be dismissed because the right of direct appeal therefrom terminated with the entry of the judgment in the action (see Matter of Aho, 39 NY2d 241, 248). The issues raised on the appeal from [*2]the order are brought up for review and have been considered on the appeal from the judgment (see id. at 248).
On March 30, 2003, the plaintiff, Integrity Real Estate Consultants, entered into a franchise agreement with the defendant third-party plaintiff, Re/Max of New York, Inc. (hereinafter Re/Max), which provided that the plaintiff would operate "a real estate service office" located at a site to be determined in Commack. Re/Max was to provide training, advertising, and assistance in the opening of the office.
Thereafter, the plaintiff leased office space in Commack. A dispute arose between the parties when the plaintiff, in November 2006, moved its office from Commack to Smithtown after Re/Max had denied its request for permission to do so. Based on a provision in the franchise agreement requiring Re/Max's consent for such a relocation, Re/Max sought to terminate the franchise agreement. The plaintiff then commenced the instant action, alleging, among other things, breach of contract and a violation of the Donnelly Act (General Business Law § 340). The plaintiff secured a temporary restraining order dated December 8, 2006, and then a preliminary injunction dated November 15, 2007, prohibiting Re/Max from terminating the franchise agreement.
Re/Max asserted counterclaims seeking, inter alia, unpaid franchise fees, as well as an award of attorneys' fees pursuant to a provision of the franchise agreement granting Re/Max the right to recover any attorneys' fees it incurred in enforcing the terms of the agreement. Re/Max also commenced a third-party action against the three owners of the plaintiff, as guarantors, to recover, inter alia, the unpaid franchise fees. The third-party defendants asserted counterclaims against Re/Max, alleging, inter alia, that Re/Max had breached the franchise agreement by removing the plaintiff from all of Re/Max's regional advertising and eliminating the plaintiff's new office location and agents from Re/Max's Internet marketing and referral services.
At a nonjury trial, one of the plaintiff's owners, the third-party defendant Angelo Inzalaco, testified that in January 2008, after the temporary restraining order and preliminary injunction had been issued, he conducted an Internet search and found that the plaintiff was no longer listed on Re/Max's regional website. Re/Max stipulated during the trial that "at some point in time" the plaintiff no longer appeared on Re/Max's regional website. The plaintiff established that it also did not appear in a Re/Max print advertisement placed in Newsday in December 2007. Inzalaco testified that, in January or February of 2008, due to Re/Max's discontinuance of the plaintiff's website listing and advertising, he and his fellow owners decided that the plaintiff would not renew its franchise agreement with Re/Max, which was scheduled to expire in June 2008. In or about January 2008, the plaintiff ceased paying franchise fees to Re/Max, and in March 2008, the plaintiff closed its office.
At the conclusion of the trial, the Supreme Court found that the plaintiff had failed to prove tortious conduct, a violation of the Donnelly Act, or that Re/Max was in contempt of the preliminary injunction. The court further found that the plaintiff had breached the franchise agreement by relocating without Re/Max's consent and by failing to pay franchise fees for January 2008 through June 2008. The court entered a judgment, inter alia, awarding Re/Max the principal sum of $36,240 for the franchise fees due and owing, as well as the principal sum of $485,000 for the attorneys' fees incurred by Re/Max in enforcing its rights under the franchise agreement. The plaintiff and the third-party defendants appeal.
The plaintiff and the third-party defendants argue, inter alia, that Re/Max materially breached the franchise agreement by cutting the plaintiff off from advertising, and that, as a result, the plaintiff and the third-party defendants are not liable for unpaid franchise fees or attorneys' fees. They further contend that the same conduct violated the preliminary injunction, and thus Re/Max should have been found to be in civil contempt, and held liable for attorneys' fees attributable to the contemptuous conduct.
"In reviewing a determination made after a nonjury trial, the power of this Court is as broad as that of the trial court, and this Court 'may render the judgment it finds warranted by the [*3]facts,' bearing in mind that in a close case, the trial judge had the advantage of seeing the witnesses and hearing the testimony" (Shahid v Slochowsky & Slochowsky, LLP, 208 AD3d 1381, 1382, quoting Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499).
The Supreme Court ruled that the third-party defendants, as guarantors, had no standing to assert counterclaims against Re/Max based upon the franchise agreement, because they were not parties to that agreement. To the extent that the third-party defendants were asserting independent causes of action existing in favor of the plaintiff, this ruling was correct (see Walcutt v Clevite Corp., 13 NY2d 48, 55-56; Ettlinger v National Surety Co., 221 NY 467). The court, however, proceeded to consider whether the third-party defendants' counterclaim alleging breach of contract, when viewed as an affirmative defense, had merit. It was appropriate to consider this question, since it is permissible for a guarantor to assert, as a defense, that the party seeking recovery from the guarantor "failed to perform [its] obligations to the principal," in whole or in part (Walcutt v Clevite Corp., 13 NY2d at 56; see Gillespie v Torrance, 25 NY 306, 308-309; Denjonbklyn, Inc. v Rojas, 154 AD3d 734, 735). Such a defense may be asserted by a guarantor because "the guarantor is not liable unless the principal is bound" (Walcutt v Clevite Corp., 13 NY2d at 56).
When viewed as an affirmative defense, the third-party defendants' breach of contract counterclaim asserted that the plaintiff was not obligated to pay the franchise fees after January 2008, since it was excused from performing under the agreement due to Re/Max's material breach of the agreement (see Grace v Nappa, 46 NY2d 560, 567; Roberts v Borg, 35 AD3d 617, 618; cf. Unloading Corp. v State of New York, 132 AD2d 543). The Supreme Court rejected this defense, reasoning that: "At the time of the complained-of breaches by Re/Max, [the plaintiff] had already breached the parties' contract by relocating. Re/Max was not obligated to support this breach by advertising [the plaintiff's] new, unauthorized location." While, under different circumstances, this reasoning might be persuasive, the facts of this case dictate otherwise. To the extent that the plaintiff's disapproved relocation could be deemed a material breach of the franchise agreement, Re/Max normally would have been excused from complying with its obligations under the agreement, and could have taken steps to terminate the agreement. Here, however, Re/Max did not have that option available to it at the time it discontinued the advertising services benefitting the plaintiff, since, after Re/Max did in fact take steps to terminate the franchise agreement, the plaintiff succeeded in obtaining a temporary restraining order, and then a preliminary injunction, prohibiting Re/Max from terminating the franchise agreement, and Re/Max was obligated to comply with those court orders while they were in effect (see Lueker v Lueker, 166 AD3d 603). Indeed, Re/Max does not argue that its exclusion of the plaintiff from its advertising and website listing was justified by any initial breach the plaintiff may have committed when it relocated its office without Re/Max's permission. Accordingly, since the evidence at trial demonstrated that Re/Max materially breached the franchise agreement by failing to fulfill its contractual obligation to provide advertising services to the plaintiff, the plaintiff was excused from continuing to perform under the agreement (see Grace v Nappa, 46 NY2d at 567), and Re/Max therefore was not entitled to recover the unpaid franchise fees.
In light of the foregoing determination, the Supreme Court's award of attorneys' fees to Re/Max cannot be sustained. "[G]enerally, in a breach of contract case, a prevailing party may not collect attorneys' fees from the nonprevailing party unless such award is authorized by agreement between the parties, statute or court rule" (TAG 380, LLC v ComMet 380, Inc., 10 NY3d 507, 515; see Great Neck Terrace Owners Corp. v McCabe, 101 AD3d 944, 946). "[C]ontractual provisions permitting the prevailing party to recover an award of legal fees must be strictly construed" (GMS Batching, Inc. v TADCO Constr. Corp., 120 AD3d 549, 552; see Hooper Associates, Ltd. v AGS Computers, Inc., 74 NY2d 487, 491-492; 214 Wall Street Associates, LLC v Medical Arts-Huntington Realty, 99 AD3d 988, 990).
Here, the relevant clause of the franchise agreement provided that: "If [Re/Max] engage[s] legal counsel in connection with any failure by [the plaintiff] or [its] Owners to comply with this Agreement, [the plaintiff] shall reimburse [Re/Max] for the costs and expenses incurred by [Re/Max] as a result of such failure and [Re/Max's] enforcement of the terms of this Agreement, including . . . attorneys' . . . fees." We cannot conclude that Re/Max is the prevailing party in this [*4]matter, or, in the words of the franchise agreement, that it incurred attorneys' fees "as a result of" the plaintiff's "failure . . . to comply with [the] Agreement," requiring Re/Max to "enforce[ ] . . . the terms of [the] Agreement." The result of the initial litigation in this case was not a determination that the plaintiff failed to comply with the agreement, but a temporary restraining order, and then a preliminary injunction, in the plaintiff's favor, prohibiting Re/Max from terminating the agreement. The result of the subsequent trial, as adjusted by the determination made herein, is the dismissal of Re/Max's counterclaim to recover the unpaid franchise fees, based on a conclusion that the plaintiff did not fail to comply with the agreement when it declined to pay those fees, having been relieved of that obligation due to Re/Max's material breach of the agreement. Thus, the above-quoted provision of the franchise agreement, strictly construed, does not warrant an award of attorneys' fees to Re/Max.
The plaintiff and the third-party defendants contend that Re/Max should have been held liable for damages and attorneys' fees because it was in civil contempt of the temporary restraining order and the preliminary injunction. "A motion to punish a party for civil contempt is addressed to the sound discretion of the motion court" (Mendoza-Pautrat v Razdan, 160 AD3d 963, 964). To support a finding of civil contempt, the moving party bears the burden of proving, "by clear and convincing evidence, (1) that a lawful order of the court was in effect, clearly expressing an unequivocal mandate, (2) the appearance, with reasonable certainty, that the order was disobeyed, (3) that the party to be held in contempt had knowledge of the court's order, and (4) prejudice to the right of a party to the litigation" (Board of Mgrs. of Brightwater Towers Condominium v M. Marin Restoration, Inc., 206 AD3d 605, 607-608 [internal quotation marks omitted]; see El-Dehdan v El-Dehdan, 26 NY3d 19, 29).
In this case, there was no clear and unequivocal mandate specifically addressed to the conduct at issue: the discontinuance of advertising (see Shea v Signal Hill Rd. LLC, 206 AD3d 1541, 1544; Kinney v Simonds, 276 AD2d 882, 884). Although, as we have determined above, Re/Max's conduct constituted a breach of its contractual obligation to provide advertising services to the plaintiff, it was not established by clear and convincing evidence that the discontinuance of advertising violated the preliminary injunction's prohibition on "terminating the franchise agreement." Under the circumstances of this case, the Supreme Court did not improvidently exercise its discretion by declining to hold Re/Max in civil contempt.
The remaining contentions of the plaintiff and the third-party defendants are without merit.
CONNOLLY, J.P., WOOTEN, ZAYAS and WAN, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court